[Civil No. 3254. Filed January 16, 1933.]

[17 Pac. (2d) 1096.]

SEARS, ROEBUCK AND COMPANY, a Corporation, Appellant, v. MARICOPA COUNTY, a Municipal Corporation of the State of Arizona, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Dudley W. Windes, for Appellee.

ROSS, C. J.—The stock of merchandise of Sears, Roebuck and Company was regularly assessed by the county assessor of Maricopa county for the year 1931 at a valuation of $36,715, upon which it paid its taxes amounting to $1,358.46, calculated on the basis of the county and state tax rate for the previous year, and was receipted therefor by the assessor in full of its taxes for the year 1931. It owned no real property.

Thereafter, in August, 1931, the state tax commission, sitting as a board of equalization, increased the assessed valuation of said property $43,445. To prevent the county assessor and county attorney, who were threatening to distrain and sell sufficient of its personal property to satisfy the taxes on the additional assessment, the company paid the taxes thereon, amounting to $1,607.47, under protest, taking the assessor's receipt therefor, and thereafter brought this action to recover said sum. A general demurrer to the complaint was sustained, and, the plaintiff declining to amend, judgment went against it.

The plaintiff appeals from such judgment, contending that the payment of the taxes on the valuation made by the assessor was a full and complete acquittance for the taxes on its property for the year 1931, and that the additional valuation placed on its property by the state board of equalization was without authority of law and void. If this contention is right, plaintiff should have had judgment against the county.

A determination of the question requires, of course, an examination and construction of our taxation laws as contained in chapter 75, section 3056 et seq., Revised Code of 1928. The law makes it the duty of the county assessor, except where otherwise provided, to ascertain, list and value the county's property for taxation purposes, and fixes the period in which this is to be done between the first Monday in January and the first day of May in each year (section 3074). A tax lien against the property attaches on the first Monday in January, and is not "satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes" (section 3101).

"Each item of property in an assessment shall be liable for the taxes on all items of personal property in the same assessment" (section 3067). Any person not owning real estate within the county of sufficient value in the assessor's judgment to pay taxes on both the real and personal property of such person must pay his taxes when assessed, at the state and county rate for the previous year (section 3081). This last section contains a full and complete procedure for the assessor to follow when in his judgment the real estate will not secure all the taxes, real and personal, of such person. It says, in part:

"The county assessor, when he assesses the property of any person, not owning real estate within the county of sufficient value in the assessor's judgment to pay taxes on both the real and the personal property of such person, shall immediately collect the taxes on the personal property so assessed. . . . "

It further provides that, if the property owner after a demand neglects or refuses to pay the taxes, the assessor shall distrain and sell, after giving notice, sufficient of the personal property of such person to satisfy the taxes and costs and issue to the purchaser a certificate of sale. And it further provides that, "if the owner shall give bond with sufficient security, to be approved by the assessor, and sufficient to cover the amount of the taxes due and the costs incident to seizure, the said property shall be released to said owner."

It will be seen that, if the assessor seize and sell the property, or sufficient thereof to pay the taxes and costs, and issue to the purchaser a certificate of sale, the tax lien is "satisfied or removed," and the property may not again be revalued or reassessed during the current year. Likewise, if the owner exercise the privilege of giving a bond for "the amount of the taxes due and the costs incident to seizure,"

the property is released to said owner, and thereafter the county's remedy is on the bond and not against the property.

Why should a different result follow when the owner of property promptly pays the taxes upon the value assessed by the assessor and receives his receipt therefor? When he does that, or when the taxes are realized on a sale, it is made the duty of the assessor to give him a receipt for his taxes "and thereafter mark the same paid, together with the amount opposite the name of the owner in the assessment roll, and in an assessor's cash book" (section 3081).

The conclusion that the payment of the taxes by the owner to the assessor, upon his valuation, satisfies or removes the tax lien from the property is further re-enforced by section 3110, wherein the county treasurer and *ex-officio* tax collector is required immediately after receiving the tax-roll to give notice thereof by publication "that one-half of the taxes on all personal property secured by real property, and one-half of the taxes on all real property, will be due and payable on the first Monday in September; . . . that the remaining one-half of such taxes will be due and payable on . . . the first Monday in March next. . . . " No mention is made in this notice of personal property taxes unsecured by lien on realty. Still, if we were in doubt, that doubt should be removed by section 3109, reading as follows:

"The jurisdiction of the county assessor for the purpose of collecting taxes on personal property not secured by real estate, shall continue in full force and effect during the entire calendar year, and all duties of assessing and valuing property and the collection of taxes on all unsecured personal property, shall be performed by the several county assessors."

While the law imposes a duty on the county treasurer, after he has received the tax-roll, to collect, by

distraint and sale, taxes on personal property, this duty and power is limited, and may not be exercised when the taxes on such property have been "otherwise collected" (section 3112). The general scheme of the tax law is that the owners of personal property, who are not the owners of real estate in the judgment of the assessor sufficient to secure all such owners' taxes, shall pay their taxes when assessed, upon the valuation fixed by the assessor, yet there are some exceptions, such as range livestock and omitted property discovered by the treasurer after receiving the tax-roll (section 3113); and as to the latter, and any other personal property upon which the taxes have not been collected, the treasurer may distrain and sell for taxes.

Both the plaintiff and defendant have cited, as bearing upon the question here, the cases of *Curry* v. *Gila County*, 6 Ariz. 48, 53 Pac. 4, and *Gibson Abstract Co.* v. *Cochise County*, 12 Ariz. 158, 100 Pac. 453, but we cannot see that they are controlling. In the Curry case the property owner exercised the privilege of giving a bond to secure his taxes to the county, and the suit was upon his bond after the tax rate for the current year had been fixed. The statute then, as now, provided that the owner of personal property, if he paid his taxes when assessed, should pay them on the basis of the county and territorial rate for the previous year, and the question was, since he had given a bond, whether his rate should be that of the current or the previous year. The court held the current tax rate was the proper one, and in that connection used this language:

"It is true that for the purpose of seizure and sale the amount to be collected in such cases is regulated by the rate of the preceding year, for the reason that the rate for the current year was not then established by the board of equalization. Such provision, however, is not a release, nor intended to be a release,

of the person owning property, and who has suffered a seizure, from payment of taxes in such amount as may be established by the board of equalization, and levied for the current year.''

We have examined the files in that case, and find that neither the complaint nor the answer made any allusion to the value of the property being increased by the board of equalization after the bond was given, as the court's opinion implies. Granting, however, that the manner in which the case was tried made an issue of the power of the board of equalization to increase the valuation after the bond was given, and that the court's decision was correct under the statutes as they then existed, it would be of no binding effect now because the statutes have been greatly changed. The revenue statute at the time of the Curry case (chapter 3, title 56, Rev. Stats. 1887) had no such provisions in it as sections 3109 and 3110, Revised Code 1928. In the Gibson case, which, by the way, construes the Curry case as a tax rate case only, the property owner paid his taxes on his personal property when they were assessed, at the rate for the previous year. The tax rate for the current year was less than the previous year, and he brought an action to recover the excess. The court held that, because the taxes were paid without protest, no right of action existed. The court also said, after quoting the statute (par. 3859, C. C. 1901; sec. 3081, Rev. Code 1928):

''This makes a special provision for the collection of the taxes on personal property under those circumstances, and when the assessor collects the taxes on personal property as authorized by statute, and the taxes are governed by the tax rate of the previous year, *the county has no further claim against the owner of that personal property,* and cannot collect any additional amount in case the levy for the current year should be at a higher rate.'' (Italics ours.)

It will be noted that the question in these cases was one involving the tax rate, which is not the question here.

There are general provisions in the tax law that seem to authorize the state tax commission acting as a board of equalization, and the board of supervisors acting as a board of equalization, to increase or decrease the value of any and all property on the tax-roll. (Sections 3061, 3062, 3063, 3086, 3087.) But we think it was not intended that such power be exercised as to personal property upon which the taxes had been paid to the assessor on a valuation fixed by him. The special provisions concerning personal property, and the manner of assessing and collecting the taxes thereon, when the owner does not own real property sufficient in the judgment of the assessor to satisfy the taxes on both his real and personal property, we think should prevail over the general provisions of the law. 25 R. C. L. 1010, § 250.

The reason the legislature vested in the assessor the power of assessing and valuing property and collecting taxes on all unsecured personal property is not hard to divine. It was because the average individual owner's personal property is of small value and also, because of its transitory nature, it may be easily removed from the county, or otherwise disposed of, before the regular collecting periods in September and March.

Since the plaintiff paid its taxes upon the terms as fixed by the law, the state tax commission acting as a board of equalization had no right or power to revalue or increase the value of the personal property for taxation for the current year, nor the county through its officers to collect taxes based on such increase or revaluation.

The judgment is reversed and the cause remanded, with directions to enter judgment for plaintiff.

LOCKWOOD and McALISTER, JJ., concur.