[Civil No. 4492.  Filed December 21, 1942.]

[132 Pac. (2d)  632.]

BEN F. NELSSEN, Appellant, v. ELECTRICAL DISTRICT No. 4, of Pinal County, Arizona; S. C. MILLIGAN, A. B. HAUSER, CARL SUMMERFELD, W. A. THOMASSON, JACK PRETZER, JR., and J. W. SAWTELLE, Constituting the Board of Directors of Electrical District No. 4, of Pinal County, Arizona; THE COUNTY OF PINAL, a Political Subdivision of the State of Arizona; ETHEL GRIFFIN, as County Treasurer of Pinal County, State of Arizona; E. THURMAN, J. W. SPRAY and W. C. SMITH, Constituting the Board of Supervisors of Pinal County, State of Arizona; and THE STATE OF ARIZONA, Appellees.

Mr. M. C. Burk, for Appellant.

Mr. W. C. Truman, and Mr. Ronald J. Ellis, for Appellees, County Treasurer, and Board of Supervisors.

Mr. A. Van Wagenen, Jr., Associate Counsel for Appellee District; Mr. Robert Denton, for Appellee District.

LOCKWOOD, C. J.—This is an action by Ben F. Nelssen, plaintiff, against Electrical District No. 4, of Pinal County, Arizona, called the district, its directors, and Pinal County, the various officials of said county, and the State of Arizona, defendants. Judgment went in favor of the district and the defendants, and this appeal was taken.

The facts necessary for a determination of this proceeding are not in serious controversy, and may be

stated as follows: The district was organized under the laws of the State of Arizona about November 9, 1929, and certain land owned by plaintiff was included therein. At that time the land in question had been entered upon by plaintiff, under the homestead laws of the United States of America, but final proof had not been made thereon, nor, of course, had either final certificate or patent issued. About May 17, 1930, the board of directors of the district caused to be issued certain bonds of the district, and a tax to be assessed and levied upon all of the lands in the district, including the homestead entry of plaintiff. On July 7, 1930, plaintiff obtained final certificate to his homestead entry and patent thereto was issued on November 15, 1930. During each of the years 1930 to 1935, inclusive, the board of directors of the district caused taxes on behalf of the district to be assessed and levied upon plaintiff's homestead, and the board of supervisors of Pinal County caused to be assessed and levied taxes upon said land for the state, county and school district in which it was situated. All of these taxes being unpaid, on November 7, 1935, the treasurer of Pinal County advertised and sold the land to the State of Arizona for the taxes, including the state, county and school district and electrical district taxes.

Plaintiff was an honorably discharged soldier from the army of the United States, having served in said army during the war with Germany in 1917 and 1918, and since prior to January 1, 1927, has continuously resided in Arizona. During the years 1931 to 1935, inclusive, plaintiff attempted to secure an exemption from taxation on the land above described from the officers of Pinal County, under section 2 of Article 9 of the Constitution of Arizona, but such exemption was never allowed by such officers during the years mentioned. No claim for exemption was ever made to the officers of the district. During the summer of 1930, and

at several times thereafter, plaintiff demanded of the district that it deliver to him electric power at the land in question, but the district wholly failed, refused and neglected to deliver same. On March 1, 1941, plaintiff tendered, under protest, to the treasurer of Pinal County, one of the defendants herein, the sum of $319.81, being the total amount of all state, county and school district taxes assessed and levied against the land, together with all interest and penalties thereon. The treasurer refused to accept said sum for the reason that the district taxes had not been paid and were not included in the amount tendered by plaintiff. Thereafter this suit was brought asking, in substance, (a) that it be declared that all actions attempting to include plaintiff's land in the district or to assess and levy district taxes against it were void; (b) that the board of supervisors be directed to refrain from assessing and levying any tax against the land on account of any claim of the district; (c) that the court decree that the sale of the lands of the plaintiff as above set forth on November 7, 1935, was illegal and void, and that the treasurer be directed to release said land from any claim by reason of said sale; (d) that the court direct the treasurer to enter a release and satisfaction of all claim for taxes and that any rights under the sale aforesaid be cancelled; and (e) that the title to the property be quieted as against the State of Arizona.

While the pleadings and prayer for relief are somewhat involved, it is evident that the theory of plaintiff is that the taxes which the district caused to be levied against his land were void for the reason that the land was never legally included within the district, and that the school, county and district taxes were void for the reason that he was entitled, under section 2 of Article 9, *supra,* to have said land exempt from all general direct property taxes.

With the possible exception of item (b), each and every portion of the relief prayed for is dependent upon plaintiff establishing that the taxes already assessed and levied against the land are for some reason illegal and void.

The defendants and the district moved to dismiss the action on the ground that the complaint did not state a claim upon which relief can be granted, and urged in support thereof the provisions of section 73-841, Arizona Code 1939, which reads as follows:

"*Contest of taxes—Injunction—Recovery and refunds.*—No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided."

The court sustained the motion except in so far as the allegation concerned the illegal inclusion of plaintiff's land within the district and overruled it as to such allegations, and after hearing proof on that issue, rendered judgment in favor of all the defendants in the action.

The first question which we have to consider is whether plaintiff is entitled to maintain this action without complying with the provisions of section 73-841, *supra.* We have had the section both as it appears in the Code of 1939 and previously as section 3136, Revised Code of 1928, and paragraph 4939, Revised Statutes of 1913, before us repeatedly for construction. *Yuma County* v. *Arizona & Swansea R. Co.,* 30 Ariz.

27, 243 Pac. 907; *Brophy* v. *Powell,* 58 Ariz. 543, 121 Pac. (2d) 647; *State Tax Commission* v. *Board of Supervisors,* 43 Ariz. 156, 29 Pac. (2d) 733; *Sears Roebuck & Co.* v. *Maricopa County,* 41 Ariz. 304, 17 Pac. (2d) 1096; *Powell* v. *Gleason,* 50 Ariz. 542, 74 Pac. (2d) 47, 114 A. L. R. 838.

In the case of *Brophy* v. *Powell, supra* [121 Pac. (2d) 653], we reviewed all these cases and reaffirmed the rule laid down in *Yuma County* v. *Arizona & Swansea R. Co., supra,* quoting from that case as follows:

" 'In *Arizona Eastern R. Co.* v. *Graham County,* 20 Ariz. 257, 179 Pac. 959, we used language that might be construed as limiting the right of action under paragraph 4939 to recover only when the law under which it was levied was invalid. We do not think such a construction justified as we believe the Legislature intended to give the taxpayer the right to test the validity of the tax upon any ground upon which he has not had an opportunity to be heard under other provisions of the law.' "

Section 73–841, *supra,* then sets forth the sole remedy of the taxpayer who desires to attack any tax already imposed upon him under any law relating to taxation, unless there is some other special remedy provided by statute for such purpose. So far as we know the only other method of attack permitted by statute is found in section 73–419, Arizona Code 1939, which reads so far as material as follows:

"*Appeal from board.*—Any person dissatisfied *with the amount of his assessment* as fixed by the board, may, on or before the fifteenth day of September following, appeal to the superior court of the county in which said board holds its sessions, by a written notice to the chairman of the board and served upon the clerk of said board, stating that the person is taking an appeal from the board and the particular matter from which the appeal is taken. . . . " (Italics ours.)

It will be seen that this remedy only applies when one is dissatisfied with the amount of his assess-

ment, and desires to raise no other objection thereto, and must be made within a specified time. We think, therefore, the exclusive remedy for plaintiff to attack the validity of any of the taxes heretofore assessed and levied against the land in question was section 73–841, *supra,* and not having complied with that, he is in no position to attack the validity of any of the taxes already levied. And if this be true, even if a compliance with section 73–841, *supra,* is taken to permit an attack on a tax sale on the ground of the invalidity of the tax on which the sale is based, he was in no position to attack the sale on that ground nor to quiet title to the land against the state.

■ It may be urged that notwithstanding this is true, plaintiff nevertheless has a right to maintain this action for injunctive relief against the levy of further district taxes on the land on the ground that it was not legally included within the district. While, as we have said, section 73–841, *supra,* is the sole remedy of a tax-payer to contest the validity of a tax already assessed and levied, with the exception of that found in section 73–419, *supra,* the statute does not apply when it is contended in advance of the levy that the property is exempt from taxation, and an injunction is sought against any assessment or levy. Such actions have frequently been maintained in this court. *Brophy* v. *Powell, supra; State* v. *Cull,* 32 Ariz. 532, 260 Pac. 1023. If, then, plaintiff has a present subsisting interest in the land, we think he is entitled to have litigated the issues of whether the land is legally included within the district, for if it is not, certainly no future taxes could be levied against it.

■ Upon the record, plaintiff was originally the owner of the land. It is alleged that it was sold to the state for delinquent taxes in 1935. Under the law any time within five years after the sale, the state had a right to apply for a treasurer's deed in the manner set

forth in sections 73–835, 73–837, Arizona Code 1939, and upon the issuance of such deed the title would vest in the grantee named therein. But there is nothing in the complaint showing that such a deed was ever issued, and until its issuance the right of redemption remains in plaintiff. Section 73–823, Arizona Code 1939. We think this still subsisting right of redemption entitles him to maintain an action for injunctive relief against the assessment and levy of further district taxes upon the land. We, therefore, consider the issue of whether the district has a right to assess and levy *future* taxes against the land in question. This depends primarily upon whether it was properly included within the district when it was organized in 1929, or has legally become a part thereafter, for obviously if it is not legally a part of the district, no district taxes can be levied against it. This involves a construction of the federal and state statutes applicable to the situation.

It is admitted that at the time the district was organized in 1929 the legal title to the land was in the government of the United States, plaintiff's only right being that of, by completion of the requirements of the federal homestead law, later acquiring title thereto.

The act under which the district was organized is Article 6 of Chapter 75 Arizona Code 1939. The general procedure for organizing a district thereunder is as follows: A petition is filed with the board of supervisors describing the lands which it is proposed to include within the district; the board sets a date for hearing and gives notice thereof by publication; if, after the hearing, the board thinks it proper, it provides for an election to determine whether the district shall be formed and to select directors. If the vote is in favor of the organization, the supervisors by resolution declare the district is organized, and thereafter it has power to proceed with business. Section 75–628, Ari-

zona Code 1939, which is a part of Article 6, *supra,* reads so far as material as follows:

"*Co-operation with federal act.*—Districts organized under this article shall have all the rights and privileges granted to them in an act of the federal Congress entitled 'An act to promote the reclamation of arid lands, approved August 11, 1916 [43 U. S. C. A. § 621 et seq.],' and the provisions of said act to promote the reclamation of arid lands are hereby made a part of this article the same as if set out herein in full. *Nothing herein shall effect government lands or the federal government except as expressly authorized by said act.* It shall be within the discretion of the board of directors when they deem such a course advisable to institute proceedings for the purpose of securing the consent and official action of the secretary of the interior making said act operative in the business and affairs of the district.

"Nothing herein shall hinder or delay the district from going forward in its organization or in proceeding to carry out all the plans and doing all the things contemplated by this article and its organization, whether they do or do not secure the operation of said act to promote the reclamation of arid lands. If the district does not decide to take steps to secure the operation of the said federal law, or making the effort fails in complying with the federal requirements, it is left optional with the district to proceed with its business with or without calling into operation the said provisions of said law. . . . " (Italics ours.)

It will be seen by this section that the state has provided that nothing in the article shall affect government lands except as expressly authorized by the federal act approved August 11, 1916, 43 U. S. C. A. § 621 et seq., but that notwithstanding this fact, the district may, as to non-federal lands, proceed with its organization and operation in the manner set up in Article 6, *supra.* We refer then to the federal act above cited. It reads so far as material as follows:

"Section 621. *Subjection of lands in State irrigation district to State laws generally.* When in any State

of the United States under the irrigation district laws of said State there has, prior to August 11, 1916, been organized and created or shall thereafter be organized and created any irrigation district for the purpose of irrigating the lands situated within said irrigation district, and in which irrigation district so created or to be created there shall be included any of the public lands of the United States, such public lands so situated in said irrigation district, when subject to entry, and entered lands within said irrigation district, for which no final certificates have been issued, which may be designated by the Secretary of the Interior in the approval by him of the map and plat of an irrigation district as provided in section 623 of this chapter, are hereby made and declared to be subject to all the provisions of the laws of the State in which such lands shall be situated relating to the organization, government, and regulation of irrigation districts for the reclamation and irrigation of arid lands for agricultural purposes, to the same extent and in the same manner in which the lands of a like character held under private ownership are or may be subject to said laws: . . . ." (Title 43 U. S. C. A. Chapter 13, § 621.)

It appears, therefore, that the only way in which federal lands may be included in an electrical district organized under Article 6, *supra,* is by the approval of the secretary of the interior expressed in the manner set forth in the federal act. There can be no question, in view of the date of the various proceedings in regard to the organization of the district, that at the time it was organized and its bonds issued, plaintiff's land was not, and could not have been, under either the state or the federal act included within the district, for the consent of the secretary of the interior had never been asked nor given, and final certificate had not yet issued.

We have had the necessity of securing this approval of the secretary of the interior to the inclusion of federal land in an irrigation district under consideration in *Re Verde River Irrigation District,* 37 Ariz. 580, 296 Pac. 804, 806. Therein we said:

"Of the lands embraced in the strip, and so attempted to be included, 3,156 acres were then owned by the United States government, 3,088 by the state of Arizona, and 634 were patented lands in private ownership. Under the provisions of section 26A, chapter 36, Special Session Laws of 1922, it was necessary that the state land commissioner sign a petition for inclusion of the state lands, and by federal statute (43 U. S. C. A. § 623) the consent of the Secretary of the Interior was required for the inclusion of lands of the United States. No petition was ever made by the state land commissioner for the inclusion of the state lands, and the Secretary of the Interior never approved of the inclusion of the lands of the federal government but on the contrary expressly disapproved thereof.

. . . . . . . . .

"The petitions are a jurisdictional prerequisite to any action of the board of directors, and it is evident from the facts above stated that the petitions filed [covering privately owned land] would not authorize the inclusion of any state or federal lands within the district, nor indeed of anything except the specific lands owned by the individual petitioners, under section 26, *supra*. Notwithstanding this the board of directors proceeded on the theory that they were sufficient to give it jurisdiction to include the whole north strip, under section 26A, *supra*. We are of the opinion that under these circumstances the action of the board in attempting to add the so-called 'north strip' was without jurisdiction, and utterly void. Since it was never legally included we need not consider whether it was properly excluded.''

The district and defendants practically concede that so long as the land remained in federal ownership it could not have been taxed as being a part of the district. But, they say, it might be legally *included* within the district at its organization without any request of the secretary of the interior, and, as soon as the title passed to the plaintiff, become liable for the taxes in question. We have been cited to no provision of the statute and to no case holding that this may be done under the present circumstances, while there are several which hold to

the contrary. *Woody* v. *Security Trust & Savings Bank,* 137 Cal. App. 29, 29 Pac. (2d) 898; *Nevada National Bank* v. *Poso Irrigation District,* 140 Cal. 344, 73 Pac. 1056; *Bishop* v. *Jordan,* 104 Cal. App. 319, 285 Pac. 1096; *Lee* v. *Osceola & Little River Road Imp. Dist.,* 268 U. S. 643, 45 Sup. Ct. 620, 69 L. Ed. 1133. As confirming this view, Article 6, *supra,* provides for a method of bringing additional lands into a district after its organization, and we think this method was intended to be exclusive. This is found in section 75–632, Arizona Code 1939, and follows the proceeding for the original organization of the district, except that the application is heard before the board of directors of the existing district rather than the board of supervisors.

We are of the opinion that both on reason and authority, upon the facts appearing in the record, the land of plaintiff was not, and could not have been, legally made a part of the district at the time of its organization, and that no proceedings were taken as permitted by section 75–632, *supra,* to bring said land within it. Such being the case, plaintiff's land was never a legal part of the district, and the trial court should have enjoined the district and defendants from attempting to levy any further district taxes thereon.

The judgment of the lower court is affirmed except so far as it refused to grant any injunctive relief against the further levy of district taxes, and is reversed so far as such refusal is concerned, and the case is remanded with instructions to grant an injunction forbidding the levy of further district taxes upon the land involved in this proceeding until its status is changed as provided by law.

McALISTER and ROSS, JJ., concur.