420 P.2d 177

**SKAGGS DRUG CENTER, INC., a corporation, Appellant**

v.

**UNITED STATES TIME CORPORATION, a corporation, Appellee.**

**No. 7959.**

Supreme Court of Arizona.

In Banc.

Nov. 17, 1966.

Ryley, Carlock & Ralston, Phoenix, for appellant.

Burns, Ferrin & Ehrenreich, Phoenix, for appellee.

JACK G. MARKS, Superior Court Judge.

This is an appeal by Skaggs Drug Center, Inc., hereinafter called the defendant or retailer, from an order of the Superior Court of Maricopa County entered on February 28, 1963, granting to United States Time Corporation, hereinafter called the plaintiff or manufacturer, a preliminary injunction restraining the defendant *pendente lite* from offering to sell plaintiff's products (TIMEX watches) at a price less than the minimum fair trade price set and established by the plaintiff, with certain exceptions not material to the issues now before the court. The complaint sought a permanent injunction (Count One) and actual damages in the sum of $10,000.00 and punitive damages in the sum of $10,-000.00 (Count Two). There had been no agreement between the parties as to minimum retail sale prices of TIMEX watches manufactured by the plaintiff. The plaintiff based its claim for relief on the "nonsigner" provision of A.R.S. §§ 44–1423.

The plaintiff alleged that it was in the business of manufacturing, selling and distributing watches which bore the trademark "TIMEX", a trade-mark exclusively owned by the plaintiff; that all of said watches and the labels affixed to the cartons

or containers in which said watches were packaged bore the trade-mark of the plaintiff; that the watches were sold by the plaintiff to retailers such as the defendant and were in continuous free, fair and open competition in Arizona and in the United States of America with watches of the same general class produced and sold by other manufacturers; that as a result thereof its trade-mark TIMEX had been widely and favorably known to the trade and to the public generally as goods and merchandise of high quality; and that it had established and maintained a valuable reputation and good will for its watches which constituted an extremely valuable business asset.

The plaintiff further alleged that it had entered into agreements with distributors and retail dealers in Arizona which provided that TIMEX watches shall not be directly or indirectly advertised, offered for sale or sold by retailers at less than the minimum retail sale prices stipulated by the plaintiff, which agreements were in effect at all times material to this case.

The defendant admitted that it was engaged in selling merchandise, including TIMEX watches, at retail in Phoenix, Arizona. It admitted having notice both of the fact that, during and subsequent to the month of June 1961, the plaintiff had entered into fair trade agreements (also referred to herein as manufacturer-retailer contracts) with wholesalers and retailers in Arizona in connection with the sale of TIMEX watches and of the minimum retail prices stipulated in said agreements. It further admitted that, notwithstanding such knowledge, it sold TIMEX watches to the public at less than such stipulated minimum retail prices, contending that in so doing it had not been guilty of an illegal or unlawful act.

The evidence before the Superior Court consisted of copies of six manufacturer-retailer contracts, dated April 1, 1961 by and between the plaintiff and six other retailers located at Phoenix and Scottsdale, Arizona.

The preliminary injunction was granted solely upon the authority of General Electric Company v. Telco Supply, Inc., 84 Ariz. 132, 325 P.2d 394 (1958), and Everybody's Drug Company v. Duckworth, 84 Ariz. 141, 325 P.2d 400 (1958), which sustained the constitutionality of A.R.S. §§ 44–1421 to 44–1424, originally known as the Fair Trade Act of 1936 (Laws of 1936, Ch. 11, § 1), hereinafter sometimes called the "Act". The court found that the six fair trade contracts in evidence were valid agreements pursuant to the provisions of the Act which read as follows:

"§ 44–1421. Definitions

"In this article, unless the context otherwise requires:

"1. 'Commodity' means any subject of commerce.

"2. 'Producer' means grower, baker, maker, manufacturer or publisher.

"§ 44–1422. Provisions permitted in contracts relating to sale or resale of fair trade commodities; fair trade commodities defined; implied exceptions to contract provisions

"A. No contract relating to the sale or resale of a commodity which bears the trade-mark, brand or name of the producer or owner of the commodity, or the label or container of which bears such trade-mark, brand or name, and which is in fair and open competition with commodities of the same general class produced by others shall be deemed to violate any law of the state by reason of any of the following provisions which may be contained in the contract:

"1. That the buyer will not resell such commodity except at the price stipulated by the vendor.

"2. That the vendee or producer require in delivery to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"B. The provisions set forth in paragraphs 1 and 2 of subsection A, when used in an agreement, shall be deemed to contain or imply conditions that the commodity may be resold without reference to the agreement in the following cases:

"1. In closing out the owner's stock for the purpose of discontinuing the delivery of any such commodity.

"2. When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

"3. By an officer acting under the orders of a court.

"§ 44–1423. Advertising or sale of commodity at less than agreed price as unfair competition; right of person damaged to maintain action

"Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of § 44–1422, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition upon which an action may be brought by any person damaged thereby.

"§ 44–1424. Inapplicability of article to contracts between producers, wholesalers or retailers

"This article shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices."

The single question presented in this appeal is whether the Fair Trade Act of 1936, as reenacted in 1956 (A.R.S. §§ 44–1421 to 44–1424), is constitutional as applied to persons not parties to fair trade agreements authorized by A.R.S. § 44–1422. No questions of fact are involved in this appeal.

The defendant contends that A.R.S. §§ 44–1421 to 44–1424 are unconstitutional for the following reasons:

(1) That the Fair Trade Act of 1936 is void because it violates. § 15 of Article 14 of the Arizona Constitution; and

(2) That the "non-signer" provision of A.R.S. § 44–1423 is void because it constitutes an attempt at an unlawful delegation of a legislative power and a deprivation of property without due process of law and is in excess of the police powers of the state exercisable by statute.

The plaintiff counters this attack on the constitutionality of the Act, and, in particular, the "non-signer" provision of A.R.S. § 44–1423, by invoking the rule of *stare decisis* urging that General Electric Company v. Telco Supply Inc., supra, hereinafter referred to as the G-E decision or case, is conclusive.

If, when the G-E case was argued before this court, the contentions were identical with the defendant's contentions herein, the doctrine of *stare decisis* might be applied by us. However, the defendant has raised an issue which was not considered by this court in the G-E case and, therefore, the constitutionality of the Act may properly be reconsidered by us at this time. State ex rel. De Concini v. Sullivan, 66 Ariz. 348, 188 P.2d 592 (1948). Furthermore, if the G-E decision were erroneous as to the issues actually litigated we are not precluded from a re-examination of our decision in that case if cogent reasons are advanced by the defendant. Garvey v. Trew, 64 Ariz. 342, 170 P.2d 845 (1946), cert. denied 329 U.S. 784, 67 S.Ct. 297, 91 L.Ed. 673 (1946); State v. Allred, 67 Ariz. 320, 195 P.2d 163, 4 A.L.R.2d 735 (1948); Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 163 A.L.R. 261 (1945); State ex rel. La Prade v. Cox, 43 Ariz. 174, 30 P.2d 825 (1934).

Scrutiny of our decision in the G-E case discloses that General Electric Company, as does the plaintiff herein, asserted, *inter alia,* in support of its contention that the Fair Trade Act of 1936 is constitutional (1) that the act did not create a monopoly in violation of § 15 of Article 14 of the Arizona Constitution, A.R.S., (2) that it was not in violation of § 1 of the Fourteenth Amendment to the Federal Constitution and (3)

that it was not in violation of § 4 of Article 2 of the Arizona Constitution guaranteeing due process of law.

■ As to the first issue we held that the Act is not a price fixing act and, therefore, is not in violation of the monopoly provisions of § 15 of Article 14 of the Arizona Constitution. We are not persuaded by the contentions of the defendant that the G-E decision was in error with respect to § 15 of Article 14 of the state constitution and, therefore, affirm our holding that the Act does not contravene the said section.

■ As to our holding in the G-E decision that the Act is not in violation of the provisions of the Federal Constitution, we recognize that the United States Supreme Court is the final arbiter when such questions are raised. Pennekamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946). Therefore, unless the United States Supreme Court has overruled or modified its decision in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed 109, 106 A.L.R. 1476 (1936), which dealt with the Illinois Fair Trade Act, S.H.A. 121½, § 188 et seq. (which is practically identical to the Fair Trade Act of 1936), during the past thirty years this court may not properly reconsider the defendant's contention that the Fair Trade Act of 1936 violates due process of law, for our G-E decision was predicated upon the Old Dearborn decision which is binding upon this court. Counsel for defendant has cited to us no such decision and our independent research disclosed none. We, therefore, reiterate our holding that the Fair Trade Act of 1936 is not violative of § 1 of the Fourteenth Amendment to the United States Constitution.

In the G-E case we upheld the validity of the Fair Trade Act of 1936 with respect to the similar requirement of due process set forth in § 4 of Article 2 of the Arizona Constitution. The defendant has failed to convince us that we were mistaken. Therefore, we again hold that the Fair Trade Act of 1936 does not violate this section of the Arizona Constitution.

■ In the G-E decision we held the Fair Trade Act of 1936 " * * * was and is a proper exercise of the police power of the state in the establishment of a public policy relating to the economy and public welfare of the state. Whether the nation is in the midst of a depression or an era of prosperity, the principle involved is the same." 84 Ariz. 132, 140, 325 P.2d 394, 400. Nothing which has been brought to our attention by the defendant convinces us that we were in error in 1958. In any event if conditions have changed which require a reappraisal of the public policy aspects of the Act the remedy is in the control of the Arizona legislature rather than in this court. General Electric Co. v. Masters, Inc., 307 N.Y. 229, 120 N.E.2d 802 (1954); appeal dismissed, 348 U.S. 892, 75 S.Ct. 215, 99 L. Ed. 701 (1954).

In addition to the matters considered in the G-E case, the retailer urges us to consider one contention not decided by this court in that case: that A.R.S. § 44–1423 is an attempt to unlawfully delegate a legislative power. The defendant argues, as the legislature is without power to arbitrarily fix a minimum retail price, *a fortiori*, it cannot delegate a power it does not possess to a manufacturer and one or more retailers who by their manufacturer-retailer contracts bind all "non-signers". See Note, 1 Ariz.L.Rev. 331, 334 (1959). The defendant claims that, should the Arizona legislature have the constitutional power to enact a valid statute fixing the selling price of watches, such authority may not be delegated without specification of adequate standards for the guidance of those to whom the power is delegated and without proper standards for judging the results of the delegated legislative authority.

■ Examination of the cases in other jurisdictions leads us to the conclusion that the Fair Trade Act of 1936, to the extent that it affects a "non-signer" such as the defendant, is not an unconstitutional delegation of legislative power.

The abstract of record reveals that the defendant has not contended that it purchased the TIMEX watches manufactured by the plaintiff prior to receipt of notice of the fact that fair trade agreements had been executed by the plaintiff and other retailers in Arizona. It must be assumed, therefore, that when defendant purchased the TIMEX watches it was advertising and offering for sale at less than the plaintiff's minimum retail sale prices set in its schedules in connection with its Arizona fair trade agreements, it did so having knowledge of the contracts and schedules. Such knowledge of the pre-existing restrictions imposed by the plaintiff when the defendant purchased watches for resale refutes the idea that compulsion had been practiced by the manufacturer. The defendant, when it acquired and accepted the watches, was not compelled to do so, but, having done so, became bound to the minimum price schedule by its own voluntary act and the provisions of A.R.S. § 44–1423.

The United States Supreme Court in the Old Dearborn decision held that the Illinois Fair Trade Act did not unconstitutionally delegate legislative power in the following language:

"* * * It is clear that this section does not attempt to fix prices, nor does it delegate such power to private persons. It *permits* the designated private persons to contract with respect thereto. It contains no element of compulsion but simply legalizes their acts, leaving them free to enter into the authorized contract or not as they may see fit. * * *". 299 U.S. 183, 192, 57 S.Ct. 139, 144. (Emphasis in original.)

■ We hold that A.R.S. § 44–1423 does not delegate to anyone the power to fix prices. At most it authorizes persons to contract with respect to articles of commerce. Retailers, such as the defendant, are wholly free to enter into such contracts or not as each sees fit. None is compelled to purchase manufacturers' products. However, by A.R.S. § 44-1423 the Arizona legislature added a condition to such pur-

chase contract. When the retailer entered into such contract with the plaintiff the terms of A.R.S. § 44–1423 became incorporated therein, as statutes of this state are a part of every contract. Yeazell v. Copins, 98 Ariz. 109, 402 P.2d 541 (1965); American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912 (1948), aff'd, 335 U.S. 538, 69 S.Ct. 258, 260, 93 L.Ed. 222, 6 A.L.R.2d 481 (1949); Lee Moor Contracting Co. v. Hardwicke, 56 Ariz. 149, 106 P.2d 332 (1940); Wise v. First Nat. Bank of Nogales, 49 Ariz. 146, 65 P.2d 1154 (1937); Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1 (1927); Pinal County v. Hammons, 30 Ariz. 36, 243 P. 919 (1926).

■ Furthermore there is no delegation of legislative power with reference to the remedy of a manufacturer. It is the legislature which provided that a manufacturer, such as the plaintiff, has a claim for relief for unfair competition should a retailer, such as the defendant, *wilfully and knowingly* offer to sell or sell any trade-marked commodity of a manufacturer at less than the price stipulated in any manufacturer-retailer contract made pursuant to the authority of A.R.S. § 44–1422. Thus it is the Arizona legislature which has set the standard of conduct for Arizona retailers and not the manufacturer. The Fair Trade Act of 1936 was complete when enacted and required no person or groups of persons to put it into force. Ely Lilly & Co. v. Saunders, 216 N.C. 163, 4 S.E.2d 528, 125 A.L.R. 1308 (1939).

■ This court is not concerned with the wisdom of the Fair Trade Act of 1936 nor may we substitute our judgment for that of the legislature in its choice of method of enforcement found in A.R.S. § 44–1423. Our inquiry is limited to the question of whether the Act contravenes the state and federal constitutions. Wisdom, necessity, propriety or expediency of the Act are matters exclusively within the province of the legislature. Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604 (1953). If the facts underlying the Fair Trade Act of

1936 are fairly debatable as the number of decisions of appellate courts attests,[1] the judgment of the legislature prevails. Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra; General Electric Company v. Kimball Jewelers, Inc., 333 Mass. 665, 132 N.E.2d 652 (1956).

It is to be noted that A.R.S. § 44–1422 is limited to the sale or resale of a commodity, such as the watches manufactured by the plaintiff, which (1) bears the trade-mark of the manufacturer and (2) is in fair and open competition with commodities of the same general class produced by others. In the instant case the trade-mark is TIMEX. In the Old Dearborn case it was held that the Illinois Fair Trade Act was dealing with a commodity *plus a trade-mark,* and in the G-E decision we held as follows:

"However, it is clearly pointed out in the Old Dearborn case, supra, that it was the right of the producer of a commodity bearing its trade-mark or brand name to protect its property right in the good will of its business and that distinctive trade-marks, labels and brands are legitimate aids to the creation or enlargement of such good will. It is further made clear that in such a statute the legislature is dealing with something more than the commodity itself; it is dealing also with a trade-mark. It is further pointed out that the statute does not prohibit the retailer from removing the trade-mark from an article and selling it as an un-identified commodity at any price he desires." (84 Ariz. 132, 138, 325 P.2d 394, 398.)

Fair trade acts have been enacted in more than forty states of the Union, most of which have been attacked as violating the constitutional rights of "non-signers". We have found that in seventeen states, in addition to Arizona, the "non-signer" provision has been held constitutional whereas in twenty-four states such provisions have been declared unconstitutional for a variety of reasons. Although reaffirming our holding in the G-E case decided eight years ago may retain Arizona in the "minority" column, we reiterate that it is our firm belief that a retailer, unhappy with the "non-signer" provision of the Act, must seek relief at the Arizona legislature and not in the courts. See, for example, Hawaii Laws of 1963, Act 88, § 1, which repealed the "non-signer" provision of Hawaii Laws of 1937, Act 212, § 1.

The order of the Superior Court is affirmed.

BERNSTEIN, V. C. J., and UDALL, LOCKWOOD, and McFARLAND, JJ., concur.

NOTE: Chief Justice STRUCKMEYER, having disqualified himself, the Honorable JACK G. MARKS, Judge of the Superior Court of Pima County, Arizona, was called to sit in his stead and participate in the determination of this case.

1. See, for example, CCH Trade Regulation Reports, §§ 6021 and 6041.