447 P.2d 262

Harold M. SHAW, dba Shaw Truck Leasing Company, and Ryder Truck Rental, Inc., Appellants,

v.

The STATE of Arizona and Clyde Killingsworth, as Superintendent of Motor Vehicles, Arizona State Highway Department, Appellees.

No. I CA–CIV 524.

Court of Appeals of Arizona.

Nov. 20, 1968.

Lutich, D'Angelo & Wilson, by Richard A. Wilson, Phoenix, for appellants.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., George Ridge, Jr., Frank J. Sagarino, Asst. Attys. Gen., for appellees.

DONOFRIO, Judge.

This action was commenced on May 19, 1959, for the recovery of certain taxes and penalties collected from plaintiffs. All taxes referred to herein were paid from receipts derived from the leasing or renting in Arizona of motor vehicles which weighed in

excess of 6,000 pounds (A.R.S. § 40–601, subsec. A(5) ). Plaintiff Shaw had paid a total of $2,537.62 before this suit was filed, and pursuant to the provisions of A.R.S. § 40–641 and § 40–648 has paid under protest the motor carrier license taxes totaling $14,299.53 subsequent to the beginning of this suit. Plaintiff Ryder had paid a total of $2,939.85 prior to this suit and, like Shaw, has paid $28,682.86 under protest since the filing of this suit. From an adverse judgment both plaintiffs appeal.

At all times pertinent hereto the plaintiffs and their predecessors were in the business of renting or leasing trucks of various sizes to the public. At no time were they engaged as common carriers of any type of commodity. It is only by definition under A.R.S. § 40–601, subsec. A(5) that either plaintiff could be considered as included in Chapter 3, Title 40 of the Arizona Revised Statutes. From the time of the delivery of the vehicle to the lessee, the lessor has no control over the vehicle, its route or destination, the commodity hauled or the manner of being loaded or unloaded.

In the case of Nelssen v. Electrical District No. 4, 60 Ariz. 145, 132 P.2d 632 (1942), the Supreme Court held that § 73–841, the antecedent to our present statute, A.R.S. § 42–204, was:

" * * * [T]he sole remedy of the taxpayer who desires to attack any tax already imposed upon him under any law relating to taxation, unless there is some other special remedy provided by statute for such purpose. * * *" 60 Ariz. at page 150, 132 P.2d at page 634.

This is a case of a license tax for which there is in fact a special remedy. A.R.S. § 40–648 provides a special statute of limitations to attack a tax assessed under A.R.S. § 40–641:

§ 40–648, subsec. A

"A motor carrier upon whom a license tax is imposed under articles 1 and 2 of this chapter shall not be permitted to test the validity thereof, either as plaintiff or defendant, unless the tax, together with all penalties thereon, is first paid to the

superintendent. No injunction shall issue from any court against the superintendent to prevent or enjoin the collection of the license tax.

\* \* \* \* \* \*

§ 40–648, subsec. C

"Any action to recover a license tax shall be filed in a court of competent jurisdiction and shall be commenced within thirty days from payment thereof. Judgment shall be given affirming, modifying or setting aside the order of the superintendent fixing the amount of the tax."

The first complaint was filed on May 19, 1959, claiming taxes for the period of October 1955 to April 1959, for both plaintiffs. An amended complaint was filed on July 31, 1959, claiming to cover all taxes paid through the month of July, 1959, for both parties. On September 4, 1959, a second amended complaint was filed in which the plaintiffs sought to avoid timely litigation by saying that any taxes they paid thereafter were to be covered in this complaint. Thereafter an answer was filed by the State raising the statute of limitations. A stipulated statement of facts was filed on October 27, 1965, at which time there was a stipulation that Shaw Truck Leasing Company had paid $14,299.53 under protest and Ryder Truck Rental, Inc. had paid $28,682.86 under protest from 1959 to the end of 1964.

The State made a motion for summary judgment, and in their accompanying memorandum raised the issue of the statute of limitations. In July of 1966 a formal written judgment granting the State's motion for summary judgment was entered. However, it did not explain whether the judgment was based upon the statute of limitations or upon a determination of the validity of the tax in question.

The Arizona Constitution permits the Legislature to determine in what manner a suit may be brought against the State. Arizona Constitution, Art. 4, Part 2, Section 18, A.R.S. Since the Legislature may set up statutes of limitations for all other actions, it should be implied that they may also pass a statute of limitation for actions against the

State. The Legislature felt that in a motor carrier license tax situation there should be a certain procedure followed in suing the State for a tax refund. A.R.S. § 40–648 was the culmination of their efforts and provided the manner and a statute of limitation for recovery of any motor carrier license tax illegally collected.

The state may set limitations upon the method and manner of bringing suit against the state as long as such methods are reasonable and do not violate any constitutional rights of the taxpayer. American Steel & Wire Co. of N. J. v. State, 49 Wash.2d 419, 302 P.2d 207 (1956); 49 Am. Jur., States, Territories, and Dependencies, Sec. 97. This Court holds that the method provided under § 40–648 does not violate any constitutional rights of the licensees and that although 30 days is an extremely short period during which to bring a lawsuit, it is not unreasonable.

We must now determine whether it is necessary to file an amended or supplemental complaint every 30 days. In doing so, it becomes necessary to ascertain the intent of the Legislature. Bushnell v. Superior Court of Maricopa County, 102 Ariz. 309, 428 P.2d 987 (1967).

The American Law Institute points out the reason for the statute of limitations in this area:

"If at the time of payment, the taxpayer protests or if he demands repayment before the collecting officer has paid it over, the collecting officer should retain the money in his control, unless a state requires him irrespective of protest or demand, to pay over all moneys collected to the division of government for which he has received them; in the absence of such a statute if, after protest or demand, he pays over all the money to the division of government he is subject to liability for the amount paid if the tax is found to be void." Restatement of Restitution, § 75 (j).

The Arizona Statutes regarding this license tax state:

"Upon receipt of the taxes the vehicle superintendent shall forthwith transmit them to the state treasurer, who shall credit them to the state highway fund." A.R.S. § 40–641, subsec. C.

" * * * If the tax found due is less than the amount paid, the excess shall be refunded by the superintendent. The amount of the refund shall be paid from any license tax receipts in possession of the superintendent, * * *." A.R.S. § 40–648, subsec. B.

These sections imply that the vehicle superintendent is precluded from turning tax monies over to the State Treasurer for at least 30 days after receipt. After the thirty-day period has elapsed he may then pay the money over without fear of liability. It appears to this Court that the purpose of the thirty days was to prevent delay in the turning over of funds to the State. In a state which has shackled itself by constitutional mandate to a total indebtedness of $350,000, Arizona Constitution, Art. 9, Sec. 5, the necessity of fiscal planning is especially important. The state must know as soon as possible what funds will and will not be available for its use.

Tennessee had a similar statute in that there was a requirement that the tax be paid and a suit brought within thirty days to recover any portion of the tax illegally obtained. The Tennessee Supreme Court in the case of American Can Co. v. McCanless, 183 Tenn. 491, 193 S.W.2d 86 (1946), held that the primary legislative intent of such an Act was to prevent delay in the collection by the state of essential revenue.

We feel that any requirement that a new action or a supplemental complaint must be filed within thirty days after payment of the tax regardless of the fact that one complaint has already stated plaintiffs' intention of contesting all subsequent taxes is an unnecessarily onerous complication to the proceedings. The vehicle superintendent, being personally served in the original suit, has actual notice that the propriety of the tax is being questioned. If the taxes collected are in fact illegal or unconstitu-

tionally collected, then the State has no right to them. There is no reason to make an additional reminder that the taxes are being paid involuntarily and that the money is not to be forwarded to the State Treasurer until after the validity of the tax collection has been determined in the courts.

The procedure set forth in A.R.S. § 40–648 does not expressly require that a protest accompany payment of the tax. Since the taxes in question were in fact paid under protest, this Court does not find it necessary to determine if the taxpayer is required to accompany its payments to the vehicle superintendent with a protest as a condition precedent to contest the validity of the tax.

The remainder of this case applies only to those taxes which were paid less than thirty days prior to the filing of the original complaint, or thirty days prior to the amended complaint of July 31, 1959, or were paid subsequent to the second amended complaint filed on September 4, 1959.

Plaintiffs contend A.R.S. § 40–601 is unconstitutional in that it violates Art. 2, Sec. 13 of the Arizona Constitution which guarantees equal rights to all persons of a class; Art. 2, Sec. 4 of the Arizona Constitution which prohibits the taking of property without due process of law; and Art. 4, pt. 2, Sec. 13 which prohibits the embracing of more than one subject in an action, which subject is not expressed in the title of the action.

 This tax is a privilege tax and as such it is not a tax on property, but a tax on the right to do business in a certain manner. Such a tax may be imposed upon any class or classes of business the Legislature so desires as long as such classification is reasonable, not arbitrary, and all that fall within that class are treated alike. White v. Moore, 46 Ariz. 48, 46 P.2d 1077 (1935).

According to *Bushnell,* our primary duty is to ascertain the intent of the Legislature when they passed the statute in question. The Arizona Supreme Court, in the case of Campbell v. Commonwealth Plan, Inc., 101 Ariz. 554, 422 P.2d 118 (1966), has construed the legislative intent. They found that this statute was passed to collect revenue for the maintenance of Arizona highways and that it was directed mainly toward those who made inordinate use of the highways for their own pecuniary benefit.

The United States Supreme Court has pointed out that such a purpose is a valid motive for the exercising of state legislative powers:

"First. It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit. (citations omitted)" Stephenson v. Binford, 287 U.S. 251, 264, 53 S.Ct. 181, 184, 77 L.Ed. 288 (1932).

█ A privilege tax on a lessor who leases heavy vehicles for transporting property on state highways, and who receives pecuniary benefits for this inordinate use of public highways, certainly is reasonable, and not arbitrary. It is reasonable to assume that the 6000-pound minimum was to keep from taxing those lessors whose vehicles were so light that they did not inflict serious wear and tear on the public highway as did the transportation vehicles leased by the plaintiffs in this case. Campbell v. Commonwealth Plan, Inc., supra. This Court feels that such a classification is not unreasonable or arbitrary.

The plaintiffs point out that by virtue of the provisions of A.R.S. § 40–601, subsec. A (5) they are subjected to the provisions of A.R.S. § 40–641 requiring them to pay taxes on a par with and under the same provisions as those engaged in "public enterprise", particularly the bond required under A.R.S. § 40–642 to secure the filing and payment of such taxes and penalties; the filing of reports under A.R.S. § 40–643; the sworn statements required under A.R.S. § 40–644; the penalties prescribed under

A.R.S. § 40–646, § 40–648, § 40–649, § 40–650, § 40–651 and § 40–652, and finally, the criminal provisions of A.R.S. § 40–660. The hypothetical question as to whether the plaintiffs are covered by all these statutes and therefore deprived of due process is not before the Court at this time.

We must bear in mind that the United States Supreme Court said in Stephenson v. Binford, supra, that:

"We need not consider whether the act in some other aspect would be good or bad. It is enough to support its validity that, plainly, one of its aims is to conserve the highways. If the legislature had other or additional purposes, which, considered apart, it had no constitutional power to make effective, that would not have the result of making the act invalid. * * *" 287 U.S. 251 at page 276, 53 S. Ct. at page 189.

■ The judiciary cannot sit as a super-legislature to determine the wisdom, the necessity, or the inconvenience of a legislative enactment. The position of the courts was pointed out early in the history of these United States by Chief Justice John Marshall:

"* * * But where the law is not prohibited, and is really calculated to affect any of the objects entrusted to the government, to undertake here to inquire into the degree of necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground. This court disclaims all pretensions to such powers." M'Culloch v. Maryland, 4 Wheat 316, 423, 4 L.Ed. 579 (1819).

This position has always been approved by the Arizona Supreme Court and the Court of Appeals. Skaggs Drug Center, Inc. v. United States Time Corp., 101 Ariz. 392, 420 P.2d 177 (1966); Bonnin v. Industrial Commission, 6 Ariz.App. 317, 432 P.2d 283 (1967).

The plaintiffs further contend that this Act when enacted was in violation of Art. 4, Part 2, Sec. 13 of the Arizona Constitution which states:

"* * * if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be embraced in the title."

The Arizona Supreme Court has set out certain rules of statutory construction in construing the constitutionality of legislative enactments. These rules are as follows:

■ 1. The court must be satisfied beyond a reasonable doubt that a statute is unconstitutional. State v. Davey, 27 Ariz. 254, 232 P. 884 (1925).

■ 2. Article 4, Part 2, Section 13 of the Arizona Constitution is satisfied if the Act states the subject in general terms without disclosing the details of the legislation. It is not necessary that the title of the Act be an index to the statute. Ellery v. State, 42 Ariz. 79, 22 P.2d 838 (1933).

■ 3. Any provision having a natural connection with a title should be held to be embraced in it. State ex rel. Conway v. Versluis, 58 Ariz. 368, 120 P.2d 410 (1941).

■ 4. Every intendment must be indulged by the courts in favor of the validity of a statute. Hernandez v. Frohmiller, 68 Ariz. 242, 243, 204 P.2d 854 (1949).

■ 5. Constitutional provisions shall not be given construction which will nullify legislation but must be liberally construed. Dennis v. Jordan, 71 Ariz. 430, 229 P.2d 692 (1951).

■ 6. The title of the Act must tell in a general way what is to follow in the way of legislation. Dennis v. Jordan, supra.

■ 7. The purpose of the constitutional provision is to prevent surprise and the evils of omnibus bills and surreptitious and hodge-podge legislation. State v. Espinosa, 101 Ariz. 474, 421 P.2d 322 (1966).

For further discussion of these rules, see 69 Ariz. 347, 213 P.2d 690 (1950) and 70 Ariz. 325, 220 P.2d 229 (1950).

■ This Court, following the above rules, holds that the title to the Act in ques-

tion satisfies Article 4, Part 2, Section 13 of the Arizona Constitution. The title to this Act was:

"DEFINING VEHICLES LEASED FOR TRANSPORTATION ON PUBLIC HIGHWAYS FOR COMPENSATION AS CONTRACT MOTOR CARRIERS FOR THE PURPOSE OF TAXATION; REQUIRING PRIVATE MOTOR CARRIERS LEASING SUCH VEHICLES TO FILE REPORT; REQUIRING PRIVATE MOTOR CARRIERS TO HAVE MANIFEST IN VEHICLES; AMENDING SECTIONS 66–501 AND 66–521, ARIZONA CODE OF 1939, AND AMENDING ARTICLE 5, CHAPTER 66, ARIZONA CODE OF 1939, BY ADDING SECTION 66–526a." Chapter 135, Session Laws of Arizona 1955, page 246.

The case of Boyes v. State of Arizona, 8 Ariz.App. 304, 445 P.2d 861 (Filed October 1968) has recently come out of this Court. Since that case cites the statute involved in this present case, we feel that it should be distinguished. Boyes deals mainly with the definition of "private motor carrier" as defined in subsection A of A.R.S. § 40–601. In the instant case we are dealing primarily with A.R.S. § 40–601, subsec. A (5) concerning "contract motor carrier of property". The Boyes case discusses the rule known as the "primary business test" and is basically concerned with whether a certain business is actually a "public motor carrier" or a "private motor carrier". The instant case deals only with the constitutionality of taxing an owner of any motor vehicle in excess of 6000 pounds unladen weight who leases, licenses, or by any other arrangement permits the use of such vehicle by any other, other than a common or contract carrier who is subject to tax under Articles 1 and 2 of Chapter 3, Title 40 of the Arizona Revised Statutes.

Affirmed.

CAMERON, C. J., concurs.

STEVENS, Judge (specially concurring).

I concur in the majority opinion in its entirety except for one legal proposition. The majority states that once a suit is filed it would be "unnecessarily onerous" to require the taxpayer to file a new action or a supplemental complaint to protect each monthly protest payment. I find no statutory exemption. To my mind it would be a simple procedure to draft a complaint in such form that a supplement to the complaint could be prepared, served and filed covering each additional payment under protest. The need for this procedure is especially clear if it be that it is not necessary to accompany each payment with a formal protest.