195 P.2d 163

**STATE v. ALLRED et al.**

No. 5004.

Supreme Court of Arizona.

June 17, 1948.

Francis J. Donofrio, County Atty., and Warren L. McCarthy, Deputy County Atty., both of Phoenix, for appellants.

Milton L. Ollerton, of Phoenix, for appellee, James B. Allred.

Evo De Concini, Atty. Gen., and Chas. D. McCarty, Asst. Atty. Gen., amicus curiae.

UDALL, Justice.

This appeal raises the question as to whether a veteran by his inaction in complying with statutory requirements has waived the right to tax exemption granted by the Constitution. The issue involved is one of considerable importance in its bearing on the fiscal affairs of the state and its political subdivisions, as well as to widows and veterans entitled to tax exemptions.

The facts giving rise to this suit are nowise in dispute, the matter having been submitted to the trial court on an agreed statement. Briefly the record shows: James B. Allred (Appellee), an honorably discharged veteran of World War I and a resident of Arizona since the year 1920, homesteaded a half-section of land in Western Maricopa County for which he received a patent from the United States on October 15, 1930. The total assessed valuation of all of his property for the year 1931 was less than $2,000, and, as he possessed the necessary qualifications entitling him to exemption from taxation under art. 9, Sec. 2 of the Constitution of Arizona, a claim for exemption was filed with the County Assessor and allowed for that year. For the years 1933 to 1944, inclusive, the appellee availed himself of the right to tax exemption (to which he was clearly entitled) and no taxes were levied or assessed against him for any of the years above named. Unfortunately, however, the appellee failed to file a claim for exemption for the year 1932, although legally he was entitled to do so, and taxes for that year were assessed and levied against his homestead by the taxing officials of Maricopa County.

The taxes for the year 1932 not having been paid, the County Treasurer of Maricopa County, on April 1, 1938, conducted a tax sale and appellee's property was

struck off to the State of Arizona. No redemption having been made within the time provided by law, the County Treasurer on June 28, 1943, executed and delivered a tax deed conveying the property to the state. Thereafter on July 17, 1944, the State of Arizona, acting by and through the Board of Supervisors of Maricopa County, Arizona, regularly sold and conveyed all of its right, title and interest in and to said property to B. F. Youngker and C. O. Vosburgh for the sum of $640. It should be noted, in passing, that no question is here raised as to the failure of the taxing officials to comply strictly with all of the statutory requirements of Art. 8, Chap. 73, A.C.A.1939, with reference to collection of delinquent taxes.

Apparently it was not until early in January of the year 1945 that appellee learned that his property had been sold for delinquent taxes for the year 1932, and it was stipulated that he would testify that he had not intentionally waived the right to claim his exemption for that year. On February 27, 1945, the appellee tendered the sum of $69.44 (amount of the 1932 tax with interest, penalty, etc.) to the County Treasurer of Maricopa County, which tender was refused.

The appellee then promptly brought suit against the State of Arizona, the Board of Supervisors, Treasurer of Maricopa County, and Youngker and Vosburgh, as defendants. The prayer was that the sale of the property by the Treasurer of Maricopa County for delinquent taxes, the conveyance of the title by him to the State of Arizona, and the sale thereof by the State to Youngker and Vosburgh be declared null and void, and that he be decreed the owner in fee simple.

Defendants Youngker and Vosburgh filed a cross-claim against the Treasurer of Maricopa County praying that if judgment be rendered in favor of the appellee (Allred) they have judgment against the Treasurer for the sum of $640 plus interest.

Doubtless relying upon the pronouncements of this court in Calhoun v. Flynn, 37 Ariz. 62, 289 P. 157, and Evans v. Hallas, 64 Ariz. 142, 167 P.2d 94, the trial court on March 1, 1947, entered judgment as prayed for by the appellee (plaintiff), and also as requested by the defendants Youngker and Vosburgh on their cross-claim. The latter, however, filed no appearance in this court.

The appellants' sole assignment of error is that the court was wrong in declaring in its judgment that the property in question was exempt from taxation for the year 1932, and hence that the subsequent tax sales were null and void. Advanced in support of this assignment is this proposition of law: "When a veteran, otherwise entitled to an exemption on his property, fails to file his affidavit claiming exemption and in addition fails to pay under protest the taxes assessed thereon before a Treasurer's Deed has issued to a purchaser under

a tax sale, he has waived his right to the exemption."

The parties to this appeal had waived oral argument and agreed to submit the matter on the briefs already filed. However, as two other related tax cases involving rights of veterans were before us for oral argument, counsel, in response to our request, appeared before the court and joined in an oral argument in which the Attorney General participated in behalf of the State. Thereafter the Attorney General was granted permission to file a brief, amicus curiae, in which he submits these propositions of law:

"The legislature may act with respect to a self-executing provision of the constitution by way of providing a more specific and convenient remedy and facilitating the carrying into effect or execution of the rights secured, making every step definite and safeguarding the same so as to prevent abuses."

"The legislature in providing that a veteran must file his exemption between the first Monday in January and the first Monday in July of each year has established a valid procedural machinery and legislation making the failure to so file a waiver of the exemption is valid."

If full weight be given to all that appears in the decisions rendered in the Calhoun v. Flynn and Evans v. Hallas cases, supra, and the logical conclusions to be drawn therefrom, then unquestionably the judgment entered in the instant case was correct and should be affirmed. We are, however, earnestly urged by the State's attorneys to review these prior decisions and establish a rule contrary to what was enunciated therein. First, it is claimed that our holdings in at least two other cases, hereafter cited and discussed, are in principle inconsistent with those contained in the Calhoun v. Flynn and Evans v. Hallas cases, supra, and that this inconsistency alone is sufficient justification for a de novo inquiry into the problem. Secondly, it is urged that most pressing considerations of public policy demand a reconsideration for the reason that, with the addition of thousands of World War II veterans to the tax rolls, uncertainty now reigns in fiscal affairs in that taxing officials are unable to compute the tax rate with any degree of accuracy, and those entitled to the exemption are never sure of their status.

By law it is made the duty of the State Tax Commission to fix the state tax rate, and of the County Board of Supervisors to fix county and district tax rates (which rates are necessarily based upon the total assessed valuation of property within their respective areas) so that there will be a yield sufficient to defray the cost of government as estimated in the budgets. If the veteran's and widow's exemption is an absolute right requiring no action upon their part to make it effective, there can be no stability or certainty in the assessment rolls as the total assessable valuation would be constantly changing as belated

exemptions were asserted. Thus the State and its political subdivisions would never realize the taxes actually levied to meet their budget requirements. Obviously the exemption of property of veterans must be determined year by year on a fact situation, i. e., whether they come within the constitutional provision of art. 9, Sec. 2. Furthermore the public officials contend that the trial court's ruling, if sustained, would destroy the efficacy and purpose of the law dealing with the collection of delinquent taxes in that prospective purchasers of lands being sold on account of tax delinquency would be deterred from bidding as they would never know when title thus acquired might be defeated.

We believe these are sufficient grounds to justify reconsideration of the legal principles involved notwithstanding the doctrine of stare decisis. While many of the pronouncements appearing in the Calhoun v. Flynn and Evans v. Hallas cases, in so far as they bear on the issues of this case, were probably dicta, they have been so often reiterated we prefer to consider such as direct decisions of this court. This court has never hesitated to review its prior decisions and where justified to overrule same. See City of Glendale v. White, 67 Ariz. 231, 194 P.2d 435; State ex rel., La Prade v. Cox, 43 Ariz. 174, 30 P.2d 825.

The appellee's right to tax exemption stems from art. 9, Sec. 2, of the Constitution of Arizona, the pertinent part of which reads: " * * * There shall be further exempt from taxation the property of widows, honorably discharged soldiers, sailors, * * *, residents of this state, not exceeding the amount of two thousand dollars, where the total assessment of such widow and such other persons named herein does not exceed five thousand dollars; * * * This section shall be self-executing."

To provide a method by which it could be factually determined what property was exempt the legislature enacted Chapter 91, Laws of 1929, which now appears in Vol. 5, A.C.A. 1939, as follows:

"73-303. Information to be given county assessor.—Every person entitled to, or applying for exemption from taxation, as specified in said provision of the constitution, shall appear before the county assessor and give all information required and answer all questions contained in the forms and affidavit prescribed by said commission and subscribe and swear to the same before such county assessor. Any false statement made or sworn to in such affidavit shall constitute and be punishable as perjury."

"73-304. Additional proof may be required—Failure to make affidavit.—Any assessor may, in his discretion, require additional proof of the facts stated by such affiant before allowing the exemption claimed. Failure upon the part of any person entitled to such exemption to make affidavit or furnish evidence as required

by this act, between the first Monday in January and the first Monday in July of each year shall be deemed and treated as a waiver of such exemption by such person."

The first case discussing the above provisions was Calhoun v. Flynn, supra [37 Ariz. 62, 289 P. 159] a mandamus action brought in the month of October to compel the County Treasurer to accept proof and allow a belated tax exemption claimed by plaintiff. This court properly held that mandamus would not lie against the Treasurer because only the Assessor had been given jurisdiction to determine who was exempt from taxation. However, the opinion goes further. "While the plaintiff failed to follow the procedure outlined in chapter 91, supra, we do not think he waived or lost his right to the exemption if in fact he falls within the class of persons intended by the Constitution to have an exemption. *The right of exemption is absolute, and no act of the Legislature can take it from him.* The provision for the exemption, under the conditions and circumstances prescribed, is mandatory in character and self-executing. *His failure to make the proof before the assessor was not a waiver of the exemption, and legislation attempting to make it a waiver is ineffective.* Any taxes collected on exempt property would be an illegal tax. * * *" (Emphasis supplied.)

In the more recent case of Evans v. Hallas, supra, reliance was had upon the dictum in the Calhoun case and the doctrine was extended even further by saying [64 Ariz. 142, 167 P.2d 98]: "It seems to be settled that where property exempt from taxation is assessed, a sale for nonpayment of the tax will pass no title", and "* * * any * * * tax upon any property exempt from taxation is void." We have no quarrel with the disposition made of the Evans case for, in addition to jurisdictional defects in procedure, it turned primarily upon the alleged fact that the widow had regularly made her claim for exemption but that the same was not allowed through error of the County Assessor.

Illustrative of the lengths to which these rulings in the Calhoun and Evans cases lead is the case of Lewis v. Palmer, Ariz., 193 P.2d 456, wherein the veteran in seeking to recover land lost by tax sale challenged its applicability to him of the doctrine of res judicata on a judgment based upon personal service foreclosing his right to redemption from tax sale. In the case at bar the rule brings about its inevitable conclusion, that is, that the veteran may remain completely silent and that any and all actions by the taxing authorities will be void if the veteran is, in fact, exempt under the terms of the constitution. It would not be surprising if it were next seriously urged that the statute of limitation could not be pleaded as a defense in these tax exemption matters because "the right of exemption is absolute and no act of the legislature can take it from them."

It is manifest that the situation is wholly unworkable and necessarily brings about a state of confusion and uncertainty in titles as well as impairing the fiscal affairs of the state and counties.

It appears to us that as to this crucial matter of the non-effectiveness of "waiver of exemption" the pronouncements in the Flynn and Evans cases conflict with other holdings of this court. In Pothast v. Maricopa County, 43 Ariz. 302, 30 P.2d 840, the taxpayer, a widow, failed to make her claim for exemption for the year 1930, prior to her death on June 23rd of that year. The executrix paid the tax under protest and sued to recover, arguing that the tax status of the property was determined as of January 1, 1930, and that hence no tax lien attached to the property in question. The court held that, since the taxpayer had not claimed her exemption at the time of her death, the exemption *had been waived and a valid tax lien had attached to the property.*

In Pima County v. Weddle, 54 Ariz. 525, 97 P.2d 531, the veteran had paid his taxes voluntarily and sued to recover, and the court held, in effect, *that since he had not availed himself of the statutory remedy he had waived his exemption.*

Turning for enlightment to another jurisdiction we find that the California District Court of Appeals in St. John's Church v. Los Angeles County, 5 Cal.App.2d 235, 42 P.2d 1093, construing similar constitutional and statutory provisions, held that since the constitutional tax exemption was self-executing, legislation making the failure to file an exemption a waiver thereof was unconstitutional, thus adopting the same line of reasoning which appears in the Calhoun v. Flynn case, supra. However, in the case of Chesney v. Byram, 15 Cal.2d 460, 101 P.2d 1106, 1107, the Supreme Court of California, sitting in banc, came to grips with the precise legal problem which now confronts us, and in an opinion that to us appears unassailable from the standpoint of logic and reason, reversed the prior holding, upheld their statute, and declared that the failure of a veteran entitled to tax exemption to file the statutory claim for exemption constituted a waiver of such right. We quote somewhat at length from this decision:

"The sole question then before this court is whether the waiver provision of section 3612 of the Political Code is an invalid infringement upon a constitutional right, or is a valid legislative provision regulating the exercise or assertion thereof.

"Respondent contends that section 1¼ of article XIII of the Constitution is self-executing and that section 3612 of the Political Code is an attempt to limit the constitutional right to exemption from taxation granted to veterans under said provision of the Constitution. * * *

"We are disposed to hold that the constitutional provision above-mentioned is self-executing; that is, that it required no legislative enactment to put it into effect. If

the legislature had failed to make any provision for a veteran to avail himself of the tax exemption provided for in said provision of the Constitution, we are of the opinion that the veteran would nevertheless be entitled to the exemption provided for. How such exemption could be obtained, would be a matter first for the determination of the assessors of the respective political subdivisions, and in case of their failure to recognize the right granted to the veteran, their action would be subject to review by the courts. However, it does not follow from the determination that the above-mentioned constitutional provision is self-executing, that the legislature did not have the power to enact legislation providing reasonable regulation for the exercise of the right to the exemption granted by the Constitution, and if section 3612 of the Political Code constitutes such reasonable regulation and not an invalid limitation of the right thereby granted, the power of the legislature to enact said section should be upheld. (Citing cases).

    \*    \*    \*    \*    \*    \*

"We are not impressed with argument advanced by respondent to the effect that the provisions of section 3612 of the Political Code imposes an unreasonable restriction or limitation upon the exercise of the right to the exemption granted by the constitutional provision above mentioned. On the other hand, it appears to us reasonable and proper that some method should be provided by the legislature for the determination of those who may be entitled to the exemption provided for in the Constitution. It is obvious that the burden should be upon the person claiming the exemption to establish his right thereto. The method provided for under section 3612 of the Political Code is a simple one and is available to all who desire to claim the exemption provided for under the above-mentioned provision of the Constitution; \* \* \*

"It has been uniformly held that the legislature has the power to enact statutes providing for reasonable regulation and control of rights granted under constitutional provisions. (Citing cases) \* \* \*"

The California court then presented two cases in illustration. In the first case the court considered the effect of a statute requiring a citizen to register in order to exercise the voting franchise guaranteed by the Constitution. It was held that such a provision did not add to the qualifications required of electors, nor abridge the right of voting, but was merely a reasonable regulation for the purpose of ascertaining who were qualified electors, and to prevent persons who were not such electors from voting. (Also see 18 Am.Jur., Elections, sec. 51) In the second case a charter provision requiring the presentation of a claim as a condition precedent to commencement of an action for compensation for property taken for public use as authorized by the Constitution was upheld. The court then went on to say:

"Certainly, if the legislature has the power to pass statutes providing reasonable regulations and control over the constitutional right of a citizen to vote and the constitutional right of a citizen to recover compensation for his property which has been appropriated to a public use, it should likewise have the power to enact statutory provisions providing reasonable regulations and control over the exercise of rights granted by the Constitution for the exemption of property from taxation.

"In determining the reasonableness of the regulation provided for in section 3612 of the Political Code as applied to the exercise of the right of a veteran to exemption from taxation under section 1¼ of article XIII of the Constitution, let us examine the constitutional provision and ascertain to whom it applies and what property is exempted from taxation thereunder. * * * If such veteran falls within the classification above-outlined, he is entitled to an exemption from taxation of any property owned by him up to the value of $1,000. It is obvious that before an assessor can determine whether or not a property owner is entitled to an exemption under the above-mentioned provision of the Constitution, it is necessary to obtain sufficient information to enable him to ascertain whether or not such person comes within the classification specified therein. It is likewise obvious that such determination and ascertainment is necessary in order to enable the assessor to make up his assessment roll and determine the value of property within the political sub-division subject to assessment and taxation. Such determination must be made not later than the first of July of each year as the assessment roll is thereupon submitted to the Board of Equalization of the respective political subdivisions and the valuation determined by such board is used as the basis for the tax rate required to raise revenue for the maintenance of the government.

"It would seem to be consonant with the establishment of a sound fiscal policy to have all matters of exemption of property from taxation determined not later than July 1st of each year, and it is obvious that this can only be done by the application of a uniform regulation to those who are entitled to exemptions. The legislature undoubtedly had the foregoing considerations in mind in the adoption of section 3612 of the Political Code and similar enactments for the determination of claims for exemption of property from taxation. Such regulations, if reasonable, as those provided for under section 3612 of the Political Code, do not constitute a limitation or restriction upon the constitutional right of the person entitled to the exemption but simply establishes a rule for the determination of whether or not the right is to be exercised or waived.

"The provisions of section 3612 of the Political Code establishes a uniform system throughout the state for those desiring to claim the exemption granted by the Con-

stitution under the provisions of section 1¼ of article XIII thereof. It amply safeguards the exercise of the right of those entitled to the exemption, facilitates the operation of the system of assessment and taxation now authorized by law, and protects the public against the fraudulent claims of those not entitled to the exemption who may nevertheless assert their claim thereto. Such legislation is clearly not in contravention of the constitutional right to which it relates.

"That a right to have property exempted from taxation can be waived, there can be no doubt. * * *

"It is well settled that a right granted by the Constitution may be waived by the inaction of the person entitled to exercise such right.

\* \* \* \* \* \*

"The inevitable result to be obtained by the line of reasoning which is the basis of the decision in the St. John's Church case must be, that if an owner of property exempt from taxation under the provisions of section 1½ of article XIII of the Constitution would fail to assert a claim of exemption for said property, and the same would be assessed and the taxes thereon become delinquent and the property sold in accordance with the law authorizing the sale of property for delinquent taxes, a purchaser at such delinquent tax sale would not acquire a valid title to the property; in other words, all proceedings in connection with the assessment, levy of taxes and sale of said property would be void. It would therefore follow that the owner of such property could ignore all proceedings instituted by public officials to have said property subjected to assessment, levy and payment of taxes, and would suffer no loss as the result of such inaction or failure to assert a claim of exemption. It is obvious that such a situation would have a detrimental effect upon the administration of the laws providing for the assessment, levy and collection of taxes, and would create a condition of uncertainty with respect to what property was available for the purpose of taxation within the respective political subdivisions which have the power to levy and collect taxes for the maintenance of local government."

From our own jurisdiction the case of Gherna v. State, 16 Ariz. 344, 146 P. 494, Ann.Cas. 1916D, 94, presents a good discussion of the power of the legislature to regulate the procedural aspects of a self-executing constitutional provision which is entirely consonant with the interpretation given in Chesney v. Byram, supra. We hold that while the legislature cannot take away the right of exemption, it may, and has, established a reasonable procedure for the voluntary assertion or waiver of the right. We are of the opinion that the very nature of the constitutional exemption provision here in question makes additional legislation both permissible and desirable, as without it the taxing officials would be unable to determine,

**330**

from year to year, just what property was exempt from taxation, and the veteran would be left in a quandary as to how to avail himself of the right granted him.

■ Furthermore, we are of the opinion that the legislation embraced in Sections 73-303 and 73-304, supra, is not such an unreasonable restraint on the exercise of the constitutional right of exemption as to amount to an indirect denial of such right. The veteran may obtain the full advantage of his exemption by the simple expedient of presenting his claim for exemption to the Assessor before the first Monday in July of each year. Surely this is not a burdensome requirement.

■ We hold that the failure of the appellee to comply with the procedure outlined by Section 73-304, supra, constituted a waiver or loss of his constitutional right to exemption from taxation for the year 1932. This legislation (Sections 73-303 and 73-304, supra) is declared effective and constitutional. We adopt the ratio decidendi of the California case of Chesney v. Byram, supra, and expressly overrule those portions of the decisions rendered in the cases of Calhoun v. Flynn and Evans v. Hallas, supra, which are in conflict with the conclusions here reached.

The judgment is reversed with directions to the trial court to enter judgment dismissing appellee's amended complaint.

R. C. STANFORD, C. J., and LA-PRADE, J., concur.