225 N.J. Super. 355 (1988)
542 A.2d 505
BETHANY BAPTIST CHURCH, PLAINTIFF-APPELLANT,
v.
DEPTFORD TOWNSHIP, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 9, 1988.
Decided June 7, 1988.
*356 Before Judges PETRELLA, BAIME and ASHBEY.
*357 Jeffrey R. Bier, attorney for appellant (Jeffrey R. Bier on the brief).
Albertson, Ward & McCaffrey, attorneys for respondent (Eugene J. McCaffrey, Jr., on the letter-brief).
The opinion of the Court was delivered by BAIME, J.A.D.
Bethany Baptist Church of Blackwood Terrace appeals from a judgment of the Tax Court upholding a determination of the Gloucester County Board of Taxation levying taxes on church property for the year 1984. The Tax Court's holding was predicated upon the fact that the property had been purchased by plaintiff after the October 1, 1983 assessment date, and prior to that time had been used for a nonexempt purpose. The trial court thus determined that the property was not immune from local taxes. Broadly stated, plaintiff contends on appeal that imposition of taxes on property used for religious activities to be paid from funds obtained through tithes and contributions runs afoul of the First Amendment's free exercise clause. We disagree and affirm.
We need not recount the facts at length. Reverend Frank T. Olsen, the pastor of the church, testified that he initially leased the subject property, which was then being used for a nonexempt purpose, in July 1982. In September of the same year, he founded the church on the property. Upon its formation, a constitution was adopted under which supervision of the church's activities is said to be "in the Lord Jesus Christ." The church has no board of elders or deacons. Instead, the pastor is the sole governing authority vested with the power to make decisions on behalf of the church.
On December 12, 1983, Pastor Olsen, on behalf of the church, entered into an agreement to purchase the property from its owners. The written agreement identified Bethany Baptist Church as the purchaser. Several days later, a certificate of incorporation of the Bethany Baptist Church of Blackwood *358 Terrace was filed for the purpose of creating a jural entity to hold title to the property. The transaction was consummated on December 30, 1983, when a deed was filed listing the corporation as the title holder.
Although the exact chronology of events is in dispute, Pastor Olsen testified that immediately after the closing, he proceeded to the Office of the Deptford Township Tax Assessor and requested a tax exemption. He was told that because the property was not owned by the church on October 1, 1983, the tax assessment date, it would be necessary to pay taxes for the year 1984. This position was later adopted by the Gloucester County Board of Taxation.
In the proceedings before the Tax Court, Pastor Olsen explained that a foundational tenet of the church required monies obtained from tithes and contributions to be used only for religious purposes. We need not recite the biblical passages which apparently form the basis for the reverend's interpretation. Suffice it to say, the church harbors the view that funds solicited from the congregation belong to the deity and cannot be used to pay taxes.
Although the Tax Court did not challenge the sincerity of this belief, it nevertheless concluded that, by statute, the pivotal date for determining the grant of an exemption was October 1, 1983 of the preceding calendar year and that property purchased thereafter and used for a tax exempt purpose was subject to the burden of taxation. While the trial court did not directly pass upon plaintiff's constitutional challenge, it apparently concluded that the statutory mandate did not violate the First Amendment's free exercise clause. We consider these points in seriatim.

I.
Initially, we are in complete accord with the trial court's conclusion that property used for a nonexempt purpose on October 1, the assessment date, which is later transferred to an *359 exempt owner, is nevertheless subject to taxation for the succeeding tax year. In other words, our statutes do not afford an exemption to an otherwise exempt owner who acquires property subsequent to the assessing date.
It is well-settled that property is tax assessable or exempt only with reference to its ownership and use on October 1 of the pre-tax year, the assessment date. See N.J.S.A. 54:4-23; N.J.S.A. 54:4-35. See also East Orange v. Palmer, 47 N.J. 307, 320 (1966); Ironbound Ed. & Cult. Ctr. v. Newark, 220 N.J. Super. 346, 354 (App.Div. 1987), certif. den. 110 N.J. 200 (1988); City of Bayonne v. International Nickel Co., Inc., 104 N.J. Super. 45, 47 (App.Div. 1968), aff'd 54 N.J. 94 (1969), app. dism. 396 U.S. 111, 90 S.Ct. 396, 24 L.Ed.2d 304 (1969); Shelton College v. Borough of Ringwood, 48 N.J. Super. 10, 11 (App. Div. 1957); Jabert Operating Corp. v. City of Newark, 16 N.J. Super. 505, 508 (App.Div. 1951); Catholic Relief Servs. v. So. Brunswick Tp., 9 N.J. Tax 25, 27-28 (Tax Ct. 1987); Schizophrenia Foundation of N.J. v. Montgomery Tp., 4 N.J. Tax 662, 665 (Tax Ct. 1982), rev'd on other grounds 6 N.J. Tax 431 (App.Div. 1984); Grace & Peace, Etc. Church v. Cranford Tp., 4 N.J. Tax 391, 397 (Tax Ct. 1982); Jackson Tp. v. Marsyll of B.B., Inc., 3 N.J. Tax 386, 389 (Tax Ct. 1981); Holy Cross, etc. Church of God v. Trenton, 2 N.J. Tax 352, 356 (Tax Ct. 1981); Greenwood Cemetery, etc. v. City of Millville, 1 N.J. Tax 408, 411 (Tax Ct. 1980); Emanuel Missionary Baptist Church v. Newark, 1 N.J. Tax 264, 268 (Tax Ct. 1980). By enacting N.J.S.A. 54:4-23, our Legislature has made it crystal clear that the use of the property on the October 1 assessment date determines whether or not it is to receive an exemption from taxation for the succeeding year.
Of course we recognize that there are several statutory exceptions to the general rule. For example, N.J.S.A. 54:4-3.6b states that an exemption may be continued without interruption when property is transferred from one exempt owner to another. See also Emanuel Missionary Baptist Church v. City of Newark, supra, 1 N.J. Tax at 268-269. Conversely, N.J.S.A. *360 54:4-63.26 and -63.28 insure that the benefit of an exemption does not continue when property is conveyed from an exempt owner to a nonexempt owner.
We are concerned here with the reverse situation, i.e., the transfer of property from a nonexempt owner to an exempt owner. In this context, the Legislature's silence evidences an intention not to afford an exemption where, after the October 1 assessment date, property used for a nonexempt purpose is transferred to an exempt owner. While our research has disclosed no New Jersey appellate court decision on the precise issue, we note that the Tax Court, in an unbroken line of decisions, has declined to accord tax exempt status in these circumstances. See, e.g., Catholic Relief Servs. v. So. Brunswick Tp., supra, 9 N.J. Tax at 28; Atlantic Cty. New School, Inc. v. Pleasantville, 2 N.J. Tax 192, 194-195 (Tax Ct. 1981); Holy Cross, etc. Church of God v. Trenton, supra, 2 N.J. Tax at 356. We are of the view that these decisions represent the correct approach, and we thus hold that tax exempt status depends on the confluence of use and ownership as of the assessment date.[1]

II.
We next turn to plaintiff's contention that the denial of tax immunity in the circumstances here is violative of its First Amendment rights. To reiterate, plaintiff contends that monies obtained from its congregants belong to the deity and, thus, the payment of taxes from such funds contravenes the church's right to freely practice its religious beliefs. We reject this contention.
*361 Sundry rights are embedded in our organic law to prove their timeless worth. Primary among the hierarchy of constitutional goals is the protection of religious freedom and expression. Our history is replete with official pronouncements as to the value and invocation of religious guidance in American life. See Lynch v. Donnelly, 465 U.S. 668, 674-675, 104 S.Ct. 1355, 1359-1360, 79 L.Ed.2d 604, 611 (1984), reh'g den. 466 U.S. 994, 104 S.Ct. 2376, 80 L.Ed.2d 848 (1984). In that context, religious institutions have traditionally enjoyed a preferred and protected status, which has severely curtailed the permissible extent of governmental regulation in this area. Our Constitution specifically refers to the tax exempt status of property used for religious purposes, N.J. Const. (1947), Art. VIII, § 1, par. 2, and this broad exemption has been upheld by the United States Supreme Court against a claim that it violates the First Amendment's establishment clause. Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).
The free exercise clause of the United States Constitution, U.S. Const. Amend. I, and its New Jersey counterpart, N.J. Const. (1947), Art. I, par. 3, extend to all lawful conduct founded in religious belief. See Thomas v. Review Bd., Ind. Empl. Sec. Div., 450 U.S. 707, 713, 101 S.Ct. 1425, 1429, 67 L.Ed.2d 624, 631 (1981); Wisconsin v. Yoder, 406 U.S. 205, 220, 92 S.Ct. 1526, 1535, 32 L.Ed.2d 15, 27-28 (1972); Sherbert v. Verner, 374 U.S. 398, 402-403, 83 S.Ct. 1790, 1792-1793, 10 L.Ed.2d 965, 969-970 (1963); State v. Cameron, 100 N.J. 586, 606 (1985) (Clifford, J., concurring); N.J. Bd. of Higher Ed. v. Shelton College, 90 N.J. 470, 482 (1982). The guarantee of religious freedom protects against more than direct governmental proscription of religious practices. See, e.g., Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); N.J. Bd. of Higher Ed. v. Shelton College, supra, 90 N.J. at 482. Even facially neutral legislation may be constitutionally offensive if, as applied to a particular religious sect, it forces individuals to choose between abandoning their religious beliefs or sacrificing a governmental benefit. Ibid. In a variety of *362 contexts, the United States Supreme Court has stated that a "regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement" according protection to the free practice of religious beliefs. Wisconsin v. Yoder, supra, 406 U.S. at 220, 92 S.Ct. at 1526, 32 L.Ed.2d at 28. It has also been stated that "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden on religion exists." Thomas v. Review Bd., Ind. Empl. Sec. Div., supra, 450 U.S. at 717-718, 101 S.Ct. at 1432, 67 L.Ed.2d at 634. In sum, "[t]he door of the Free Exercise Clause stands tightly closed against any governmental regulation of religious beliefs," and, to that extent, the state may neither compel affirmation of repugnant religious practice nor penalize either directly or indirectly individuals or groups because of the religious views they harbor. Sherbert v. Verner, supra, 374 U.S. at 402, 83 S.Ct. at 1792, 10 L.Ed.2d at 969.
Recognizing that the "power to tax ... is the power to control or suppress," Murdock v. Pennsylvania, 319 U.S. 105, 112, 63 S.Ct. 870, 874, 87 L.Ed. 1292, 1298 (1943), the United States Supreme Court has placed under close scrutiny taxation statutes and licensing fee ordinances which, either facially or in their application, tend to inhibit the dissemination of particular religious views. See Follett v. McCormick, 321 U.S. 573, 576, 64 S.Ct. 717, 718, 88 L.Ed. 938, 940-941 (1944); Grosjean v. American Press Co., 297 U.S. 233, 243, 56 S.Ct. 444, 446, 80 L.Ed. 660, 665 (1936). In that regard, the Court has said that the free exercise of religious beliefs "can be crushed and closed out by the sheer weight of the ... tribute which is exacted...." Murdock v. Pennsylvania, supra, 319 U.S. at 115, 63 S.Ct. at 876, 87 L.Ed. at 1299.
This much conceded, it is equally well-settled that religious groups are not free from all financial burdens of government. *363 Id., 319 U.S. at 111, 63 S.Ct. at 874, 87 L.Ed. at 1298. Indeed, "[n]ot all burdens on religion are unconstitutional." United States v. Lee, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127, 132 (1982). Cf. Market Street Mission v. Bureau of Rooming and Boarding House Standards, 110 N.J. 335, 339, 340 (1988). "The state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." Ibid. Legislation that impedes the exercise of religion may nevertheless be constitutional "if there exists no less restrictive means of achieving some [important] state interest." N.J. Bd. of Higher Ed. v. Shelton College, supra, 90 N.J. at 483. See also O'Lone v. Estate of Shabazz, 482 U.S. ___, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Goldman v. Weinberger, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986).
Applying these principles, we perceive no abridgment of First Amendment freedoms. It bears emphasis that the question presented here is, strictly speaking, not one of tax exemption. No one currently disputes the validity of the statutory exemption from taxes with respect to property which is used for religious purposes. We emphasize that the controversy here is over the date on which the exemption commences. So posited, we are satisfied that no constitutional or statutory provision mandates that property must be exempted from taxation the moment of its acquisition. As we have taken pains to say, our Legislature has stated unequivocally, by reason of its enactment of N.J.S.A. 54:4-23, that the use of the subject property on October 1, the assessment date, is to determine whether or not an exemption is to be given for the succeeding tax year.
We discern a compelling state interest supporting that statutory mandate. New Jersey's system of taxation of property was described in detail by our Supreme Court in East Orange v. Palmer, supra, 47 N.J. at 317-323. Suffice it to say, the panoramic view provided by that opinion clearly discloses the *364 "tight relation between the raising of necessary governmental revenues and the taxable properties on the rolls...." Id. at 318. The annual finances of each taxing entity sharing in the municipal levy "are dependent upon tax revenues computed on the basis of the taxable real property on the assessor's list." Ibid. In that context, "[m]id-year cancellation of tax liability by reason of a property so listed becoming exempt during the year would result ... in a major dislocation and an unfair burden to the remaining taxpayers of the municipality...." Id. at 318-319. Of course, it is true that changes in assessment during a tax year occasioned by appeals, correction of clerical errors and the like may well have a substantial impact on raising the necessary revenue for governmental obligations. Nevertheless, a requirement imposed by the judiciary mandating that property acquired by an exempt owner must receive an exemption at the exact time of its acquisition would severely impair the ability of the tax authorities to predict revenues for the tax year. We perceive no constitutional doctrine requiring deviation from the statutory requirement that exemptions be determined and fixed at the time of the assessing date.
One further matter deserves some attention. In support of its argument, plaintiff notes that not all churches or sects harbor religious beliefs against the payment of taxes. Plaintiff thus asserts that the dislocation which would follow granting it an exemption from taxation would be relatively minimal. However, this contention ignores the tension between the free exercise and establishment clauses that would be created were we to pick and choose churches and sects subject to exemption from taxes in an attempt to accommodate religious beliefs. See Thomas v. Review Bd., Ind. Empl. Sec. Div., supra, 450 U.S. at 720-722, 101 S.Ct. at 1433-1434, 67 L.Ed.2d at 635-637 (Rehnquist, J., dissenting). It is to be stressed that "we are a cosmopolitan nation made up of people of almost every conceivable religious preference." Braunfeld v. Brown, 366 U.S. 599, 606, 81 S.Ct. 1144, 1147, 6 L.Ed.2d 563, 568 (1961). By granting *365 exemption from taxation to particular religions, churches or sects, while leaving it to others to meet their fair share of the burden of taxation, the effect would be to reward some at the expense of others. The tax system could not function if denominations were allowed to challenge their obligation to pay taxes based upon their religious beliefs. See United States v. Lee, supra, 455 U.S. at 260, 102 S.Ct. at 1056, 71 L.Ed.2d at 134.
To maintain an organized society that guarantees religious freedom to a great variety of faiths "requires that some religious practices yield to the common good." Id., 455 U.S. at 259, 102 S.Ct. at 1056, 71 L.Ed.2d at 133. We thus hold that because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax.
Accordingly, the judgment of the Tax Court is affirmed.
NOTES
[1] We note that plaintiff did not file an initial statement for a tax exemption on November 1 of the preceding tax year, as required by N.J.S.A. 54:4-4.4. See Atlantic Cty. New School Inc. v. Pleasantville, supra, 2 N.J. Tax at 195. See also Indian Hills Church v. County Bd. of Equal., 226 Neb. 510, 412 N.W.2d 459 (1987), holding that the denial of a tax exemption to a church based upon its failure to file an initial statement does not constitute an abridgement of First Amendment rights.