314 P.3d 806

**CHURCH OF the ISAIAH 58 PROJECT OF ARIZONA, INC., Plaintiff/Appellant,**

v.

**LA PAZ COUNTY, Arizona; George Nault, La Paz County Assessor; and Leah Castro, La Paz County Treasurer; Richard Oldham and Oldham Family Trust, Defendants/Appellees.**

No. 1 CA–TX 12–0001.

Court of Appeals of Arizona, Division 1, Department T.

Sept. 12, 2013.

Alliance Defending Freedom By Erik W. Stanley, Leawood, KS, Co–Counsel for Plaintiff/Appellant.

Steven D. Keist, PC By Steven D. Keist, Glendale, Co–Counsel for Plaintiff/Appellant.

Warnock, MacKinlay & Carman, PLLC By Andre E. Carman, Prescott, Co–Counsel for Plaintiff/Appellant.

Tony Rogers, La Paz County Attorney By R. Glenn Buckelew, Deputy County Attorney, Parker, Attorneys for Defendants/Appellees.

## OPINION

DOWNIE, Judge.

¶ 1 Church of the Isaiah 58 Project of Arizona, Inc. ("Taxpayer") appeals the dismissal of its complaint by the Arizona Tax Court. We affirm and hold that because taxing authorities acted under semblance of authority, the tax court appropriately dismissed Taxpayer's claims for injunctive relief. Additionally, the counts of the complaint seeking declaratory relief were properly dismissed because Taxpayer did not pay the assessed taxes before filing suit.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Taxpayer purchased the real property at issue in these proceedings ("the Property") in August 2006. Among other activities, Taxpayer holds church services and Bible study at the Property, which is located in Quartzsite, Arizona.

¶ 3 According to Taxpayer, it requested a tax exemption from the La Paz County Assessor ("the Assessor") after acquiring the Property, but was advised in October 2006 that it must pay property taxes for that year.[1] Taxpayer, though, did not pay the 2006 taxes.

---

1. For purposes of appeal, we accept as true the complaint's allegations regarding the 2006 tax year. We note, however, that Taxpayer has not alleged, and the record does not reflect, that

¶4 On February 20, 2007, Taxpayer filed an Affidavit for Organizational Tax Exemption. By letter dated June 19, 2007, the Assessor requested additional information to "complete [Taxpayer's] application." Specifically, the Assessor explained that a "Letter of Determination" from the Internal Revenue Service ("I.R.S.") was "a pre-requisite to the property tax exemption process." On September 5, 2007, Taxpayer advised the Assessor it was not required to obtain the requested I.R.S. letter and stated it "had decided not to file for a 501(c)(3) letter of determination." Taxpayer did, however, provide a copy of its Articles of Incorporation.

¶5 Due to the delinquent 2006 taxes, the La Paz County Treasurer ("the Treasurer") sold a tax lien on the Property, issuing a Treasurer's Tax Lien Certificate to Richard Oldham and the Oldham Family Trust and Decedent Trust (collectively, "the Oldhams"). The Assessor also assessed taxes against the Property for subsequent years. When those taxes became delinquent and remained unpaid, they were added to the tax lien.[2]

¶6 On June 23, 2009, Taxpayer sent the Assessor a copy of correspondence it had received from the Arizona Department of Revenue ("ADOR"). The ADOR letter stated that Taxpayer was exempt from state income tax pursuant to A.R.S. § 43–1201(4) and that Taxpayer's property "used or held primarily for religious worship" was exempt from taxation under A.R.S. § 42–11109(A). Based on the ADOR letter, the Assessor granted Taxpayer an exemption for 2009, with the proviso that the exemption did not apply to that portion of the Property east of South Moon Mountain Road.[3] Taxpayer received the exemption despite the fact that the statutory deadline for submitting exemption requests had expired for tax year 2009. See A.R.S. § 42–11153(A).

¶7 Taxpayer filed a seven-count complaint in the tax court in March 2011, requesting:

- Count 1: injunctive relief against "Illegal Tax";
- Count 2: injunction against foreclosure;
- Count 3: declaratory relief (entitlement to religious exemption);
- Count 4: "Action Pursuant to A.R.S. § 42–18352";
- Count 5: injunctive relief based on the Free Exercise of Religion Act ("FERA");
- Count 6: declaration that the "practice and policy of granting property tax exemptions only to those churches who have a 501(c)(3) letter of determination from the IRS favors some churches over others," in violation of the "Federal Establishment Clause";
- Count 7: injunctive relief based on "Violation of Federal Free Exercise Clause."

¶8 The Assessor, the Treasurer, and La Paz County (collectively, "La Paz County defendants") moved to dismiss the complaint "pursuant to Rule 12(b)" of the Arizona Rules of Civil Procedure ("Rule"). The tax court treated the motion to dismiss as one arising under Rule 12(b)(1)—lack of jurisdiction over the subject matter. The court granted the motion, and this timely appeal followed.

## DISCUSSION

¶9 Taxpayer does not take issue with the tax court's treatment of the motion to dismiss as one contesting subject matter jurisdiction under Rule 12(b)(1). Subject matter jurisdiction "refers to a court's statutory or constitutional power to hear and determine a particular type of case." *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14, 223 P.3d 653, 655 (2010). We review *de novo* a dismissal for lack of subject matter jurisdiction. *Mitchell v. Gamble*, 207 Ariz. 364, 367, ¶ 6, 86

---

Taxpayer filed the affidavit required by Arizona Revised Statutes ("A.R.S.") section 42–11152 for 2006. And as we discuss *infra*, ¶ 10, the statutory deadline for requesting an exemption expired before Taxpayer acquired the Property.

2. The assessed amounts were:
   - 2006—$14,647.36;
   - 2007—$12,844.48;
   - 2008—$12,406.82;
   - 2009—$1,661.79.

3. Taxpayer concedes that its land lying east of South Moon Mountain Road is subject to taxation. The 2009 assessment is for that land only. Additionally, a portion of earlier years' assessments is attributable to that land; those amounts are not at issue in this litigation.

P.3d 944, 947 (App.2004) (citations omitted). In resolving a subject matter jurisdiction challenge, the trial court "may take evidence and resolve factual disputes essential to its disposition of the motion" without converting the motion into one for summary judgment.[4] *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 506, 744 P.2d 29, 33 (App.1987). We will affirm the tax court's decision if it is correct for any reason. *See Ariz. Bd. of Regents ex rel. Univ. of Ariz. v. State ex rel. Ariz. Pub. Safety Ret. Fund Manager Adm'r*, 160 Ariz. 150, 154, 771 P.2d 880, 884 (App.1989).

## I. Tax Years at Issue

■ ¶ 10 Taxpayer did not purchase the Property until after the statutory deadline for requesting an exemption for tax year 2006 had expired. *See* A.R.S. § 42–11153(A) (requiring property tax exemption requests to be filed "between the first Monday in January and March 1"). At oral argument before this Court, Taxpayer's counsel conceded that Taxpayer may not challenge the 2006 tax assessment because it acquired the property too late in the calendar year. We agree. Arizona's statutes do not afford an exemption to an otherwise exempt owner who acquires property after the statutory deadline for seeking a tax exemption.[5] *Cf. Bethany Baptist Church v. Deptford Township*, 225 N.J.Super. 355, 542 A.2d 505, 508 (N.J.Super.Ct.App.Div.1988) ("[T]ax exempt status depends on the confluence of use and ownership as of the assessment date."). Because Taxpayer was not eligible for an exemption for tax year 2006, we affirm the dismissal of all claims relating to that year.

¶ 11 Taxpayer filed a timely property tax exemption request for 2007. We examine each count of the complaint as it relates to that tax year *infra*.

■ ¶ 12 Taxpayer did not file an exemption request for 2008—timely or otherwise. It has thus waived any claim to an exemption for that year. Except under circumstances not applicable here, "a failure by a taxpayer who is entitled to an exemption to make an affidavit or furnish evidence required by this article between the first Monday in January and March 1 of each year constitutes a waiver of the exemption." A.R.S. § 42–11153(A); *see also State v. Allred*, 67 Ariz. 320, 329–30, 195 P.2d 163, 169–70 (1948) (notwithstanding constitutional provision granting exemption to veterans, failure of a veteran to follow statutory procedures in requesting an exemption waives that right); *Lyons v. State Bd. of Equalization*, 209 Ariz. 497, 502, ¶ 19, 104 P.3d 867, 872 (App.2005) ("A taxpayer seeking an exemption for religious property must file an affidavit of eligibility with the county assessor in January or February of the tax year or waives the exemption."). If, however, Taxpayer had submitted evidence of its tax exempt status under 26 U.S.C. § 501(c)(3), it would have been relieved of the statutory obligation to file annual affidavits of eligibility. *See* A.R.S. § 42–11109(C) (religious organization filing evidence of tax exempt status under § 501(c)(3) is "exempt from the requirement of filing subsequent affidavits under § 42–11152 until all or part of the property is conveyed to a new owner or is no longer used for religious worship").

¶ 13 The Assessor's failure to formally deny the 2007 exemption request did not affect Taxpayer's ability or duty to comply with statutory requirements for seeking a 2008 tax year exemption. Moreover, Taxpayer knew no later than February 2008,

---

4. Notwithstanding the tax court's ability to resolve factual disputes in determining subject matter jurisdiction, it does not appear that it resolved or relied on disputed facts. The same is true of our analysis. As noted *supra*, n. 1, we have assumed the truth of Taxpayer's allegations regarding tax year 2006. Taxpayer also stresses certain facts regarding its failure to file an exemption request for 2008. It is not necessary to accept or reject those factual recitations, though, because as we discuss *infra*, ¶¶ 12–13, Taxpayer had a statutory obligation to file an exemption request for 2008, which it failed to do.

5. We note, however, that a religious organization failing to file a timely exemption affidavit may, within one year of paying the assessed amounts, petition for a refund and direction that the Assessor "[f]orgive and strike off from the tax roll any property taxes and accrued interest and penalties that are due but not paid." A.R.S. § 42–11109(E). Taxpayer did not avail itself of this statutory remedy.

when it received notice of the tax lien, that its exemption request had been denied. At that point, the deadline for requesting an exemption for 2008 had not yet expired. *See* A.R.S. § 42–11153(A). Taxpayer, though, filed no request. We therefore affirm the dismissal of all claims relating to the 2008 tax year.

¶ 14 The 2009 tax year is not at issue in this appeal. As noted *supra,* ¶ 6, Taxpayer received an exemption for 2009 that covered all but a small portion of the Property.

¶ 15 Having determined that Taxpayer may only challenge defendants' actions regarding the 2007 tax year, we next evaluate the counts of the complaint to determine whether they were properly dismissed.

## II. Claims for Injunctive Relief [6]

¶ 16 Count 1 of the complaint requests an injunction against an "illegal tax," alleging the Assessor "had no semblance of authority" for imposing property taxes, refusing an exemption, or requiring an I.R.S. letter of determination. Count 5 requests injunctive relief based on an alleged violation of FERA. Count 7 is a claim for injunctive relief based on a purported violation of the free exercise clause of the First Amendment.

¶ 17 It is the "well-established policy of this state to prevent the validity of a tax from being tested by injunctive means." *State ex rel. Lane v. Superior Court (Struckmeyer)*, 72 Ariz. 388, 391, 236 P.2d 461, 462–63 (1951). Arizona's anti-injunction statute, A.R.S. § 42–11006, provides:

> A court may not issue an injunction, writ of mandamus or any other extraordinary writ in any action or proceeding against the state, a county or municipality or a state, county or municipal officer to prevent or enjoin:
>
> 1. Extending an assessment on the tax roll.
>
> 2. Collecting an imposed or levied tax.

*See also* A.R.S. § 12–1802(4) (injunction may not issue to "prevent enforcement of a public statute by officers of the law for the public benefit").

¶ 18 Since 1913, Arizona has statutorily prohibited the courts from enjoining certain tax-related functions delegated to the executive branch of government. *See, e.g., Yuma County v. Ariz. & S.R. Co.,* 30 Ariz. 27, 30–35, 243 P. 907, 908–10 (1926) (discussing 1913 Code prohibition). The policy behind such statutes is "the realization that to so permit injunction would be, at least temporarily, to emasculate all tax measures." *Lane,* 72 Ariz. at 391–92, 236 P.2d at 462–63 (noting the "great harm that would result if injunction were allowed to stay the payment of taxes to the sovereign state"); *see also Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 527–28, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) ("The property tax is by far the most important source of tax revenue for cities and counties.... We may readily appreciate the difficulties encountered by the county should a substantial portion of its rightful tax revenue be tied up in injunction actions."); *Bob Jones Univ. v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (explaining purpose of federal anti-injunction act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund' "); *Drachman v. Jay,* 4 Ariz.App. 70, 73, 417 P.2d 704, 707 (1966) (rationale for anti-injunction statutes "is that the government not be hampered or interfered with in the collection of revenues so essential to the sustenance of governmental functions").

¶ 19 The Arizona Supreme Court has recognized a narrow exception to the statutory prohibition against injunctive relief when the challenged taxes have been levied without semblance of authority "and resulting injury cannot be adequately provided by proceedings at law." *Crane Co. v. Ariz. State*

---

6. Count 2 seeks an injunction against foreclosure as to the Oldhams. The judgment on appeal was based on a motion filed by the La Paz County defendants that the Oldhams apparently did not join. The judgment includes Rule 54(b) language—presumably in recognition of the remaining unadjudicated claim against the Oldhams. The parties have presented no argument on appeal regarding count 2, and we therefore do not address it.

*Tax Comm'n*, 63 Ariz. 426, 445, 163 P.2d 656, 664 (1945), *overruled in part on other grounds by Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 959 P.2d 1256 (1998); *see also Santa Fe Trail Transp. Co. v. Bowles*, 62 Ariz. 177, 179, 156 P.2d 722, 723 (1945) ("If there is some semblance of authority for the imposition of such tax plaintiff's remedy is to pay the tax under protest, then test its validity by suing for recovery. . . .").[7] But an injunction is not available "to restrain the assessment of taxes imposed by law so long as the tax official acts with semblance of authority." *Lane*, 72 Ariz. at 392, 236 P.2d at 463. The question thus becomes: What constitutes a "semblance of authority"?

¶ 20 It is clear that a legally or factually erroneous decision, standing alone, does not establish that a taxing authority acted without semblance of authority. *See Bowles*, 62 Ariz. at 180, 156 P.2d at 723 (injunctive relief not available "in all cases where the tax is illegally imposed"). If the rule were otherwise, the prohibition against injunctive relief would be meaningless. Any aggrieved taxpayer could allege that a challenged tax was erroneously assessed or collected, making it "illegal." *See Blubaum v. Cantor*, 21 Ariz. App. 586, 589, 522 P.2d 51, 54 (1974) (prohibiting injunction to test legality of assessor's actions; "[t]o hold otherwise would be to elevate every erroneous, wrongful or illegal action of the assessor to the status of an act done without 'semblance of authority', in effect nullifying the anti-injunction provisions"); *Bowles*, 62 Ariz. at 180, 156 P.2d at 723 ("To hold that injunction is the proper remedy here would be equivalent to saying that injunction would lie in all cases where the tax is illegally imposed.").

¶ 21 Furthermore, the exception to our seemingly absolute anti-injunction statute is a judicial creation and, as such, must be narrowly applied to comport with separation of powers principles. *See* Ariz. Const. art. 3 (legislative, executive, and judicial branches of government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others"). It is the prerogative of the legislative branch to set policy for tax assessments and collections. *Cf. Snyder v. Marks*, 109 U.S. 189, 193–94, 3 S.Ct. 157, 27 L.Ed. 901 (1883) (system prescribed by Congress for tax assessments and collections is "a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues"). Courts interpreting the federal anti-injunction statute have similarly held that exceptions to the statutory ban against injunctive relief must be narrowly construed. *See, e.g., Air Polynesia, Inc. v. Freitas*, 742 F.2d 546, 547 (9th Cir.1984) (holding that the lack of a "plain, speedy and efficient remedy," as an exception to the ban against tax-related injunctions, "must be construed narrowly"); *Petrie v. Comm'r of Internal Revenue*, 686 F.Supp. 1407, 1412 (D.Nev.1988) (federal anti-injunction act is "strictly enforced," though a "narrowly drawn judicial exception has been established").

¶ 22 Turning now to the meaning of "semblance of authority," we note that the term "semblance" has been defined as "outward and often specious appearance or show," *Merriam–Webster*, http://www.merriam-webster.com/dictionary/semblance, and as "the outward appearance or apparent form of something, especially when the reality is different," *Oxford Dictionaries*, http://oxford dictionaries.com/definition/english/semblance?q=semblance. Recognized examples of actions exceeding a semblance of authority include imposing property taxes on land not within a taxing authority's jurisdiction, *Nelssen v. Elec. Dist. No. 4 of Pinal County*, 60 Ariz. 145, 151, 132 P.2d 632, 634–35 (1942), *modified on reh'g*, 60 Ariz. 175, 133 P.2d 1013 (1943), and attempting to "collect a tax which does not exist," *Crane*, 63 Ariz. at

---

**7.** To resolve this appeal, we need not determine whether the exception discussed in *Bowles* and *Crane* remains viable after the enactment of statutes, beginning in 1964, that expand the prohibition against injunctive relief. *See, e.g., Drach-man*, 4 Ariz.App. at 72–73, 417 P.2d at 706–07 (noting distinctions between 1964 anti-injunction statute and earlier statutes); *Bade v. Drachman*, 4 Ariz.App. 55, 62–63, 417 P.2d 689, 696–97 (1966) (same).

447, 163 P.2d at 665. Our supreme court has made clear that conduct exceeding a semblance of authority is exceptional in nature. In an analogous context involving property valuations, the court explained:

> Courts hesitate to interfere with the taxing processes employed by taxing officials of a state. Consequently, before the injunctive powers of a court of equity are allowed to be used to this end, the conduct of such officials in valuing and assessing properties *must be such as amounts to legal fraud or the equivalent thereof.* To place such conduct in this category, there must be something more than a dispute between the taxpayers and the taxing officials as to the valuation placed upon their properties. It is not enough if the officials merely made a mistake in judging value.... Before the court will interfere, *it must be clearly shown that assessments which are unequal are the result of systematic and intentional conduct and not mere error in judgment.*

*McCluskey v. Sparks,* 80 Ariz. 15, 19–20, 291 P.2d 791, 793–94 (1955) (emphasis added and internal citation omitted).

¶ 23 Applying these standards, we conclude that the record in this case neither includes allegations of nor gives rise to a reasonable inference of "legal fraud or the equivalent." *See id.* at 19, 291 P.2d at 794. Defendants have the undisputed authority to assess and collect taxes for real property in La Paz County, where the Property is located. The burden is on a taxpayer seeking a property tax exemption "to show by satisfactory proof that he falls within one of the classes named." *Calhoun v. Flynn,* 37 Ariz. 62, 67, 289 P. 157, 158 (1930), *overruled in part by Allred,* 67 Ariz. at 330, 195 P.2d at 170. And the legislature has specifically authorized the Assessor, in his or her discretion, to "require additional proof of the facts stated by the person before allowing an exemption." A.R.S. § 42–11152(B).

¶ 24 Church ownership of property is not in itself notice to taxing authorities that property is exempt from taxation. *Maricopa County v. N. Phoenix Baptist Church,* 2 Ariz.App. 418, 423, 409 P.2d 577, 582 (1966). The Arizona Constitution authorizes, but does not mandate, exempting churches from taxation. Ariz. Const. art. IX, § 2(2) ("Property of educational, charitable and religious associations or institutions not used or held for profit *may* be exempt from taxation by law.") (emphasis added). The Arizona legislature has enacted various exemptions "by law," as our constitution permits. One such exemption, codified in A.R.S. § 42–11109(A), exempts property "used or held primarily for religious worship" from taxation if it "is not used or held for profit." Unlike the federal government, though, our legislature has not relieved churches of the obligation to timely seek and obtain determinations of tax-exempt status. *Compare* 26 U.S.C. § 508(c)(1)(A) (churches need not apply for tax exempt status) *with* A.R.S. §§ 42–11101 through–11155 (dictating requirements for obtaining property tax exemptions).

¶ 25 The Assessor's initial position that Taxpayer must supply an I.R.S. letter of determination was wrong. Insistence on that method of proof, to the exclusion of all others, is inconsistent with recognized statutory options for proving tax-exempt status. *See* A.R.S. § 42–11154(1) (non-profit status may be shown by I.R.S. letter of determination "or the department of revenue recognizing the organization's tax exempt status"). But although the Assessor erred at the outset (and modified his position once Taxpayer presented a statutorily recognized alternate form of proof), that conduct, coupled with the allegations of the complaint, does not demonstrate that the La Paz County defendants acted without semblance of authority. The tax court therefore properly dismissed counts 1, 5, and 7 of the complaint for lack of subject matter jurisdiction.[8]

### III. Counts Seeking Declaratory Relief

¶ 26 Count 3 of the complaint seeks a declaration that Taxpayer was entitled to an

---

8. Because defendants acted under semblance of authority, we need not determine whether Taxpayer possessed an adequate remedy at law as to those counts seeking injunctive relief. *See* *Bowles,* 62 Ariz. at 179, 156 P.2d at 723 (if semblance of authority exists, taxpayer's remedy is to pay tax under protest, then test its validity by suing for recovery).

exemption under A.R.S. § 42–11109. Count 6 asks the court to find that "[t]he Assessor's practice and policy of granting property tax exemptions only to those churches who have a 501(c)(3) letter of determination from the IRS favors some churches over others."

¶ 27 To the extent count 6 seeks a declaration that defendants may not insist on an I.R.S. letter of determination as the sole method of proving entitlement to a tax exemption, that claim is moot. *See Vinson v. Marton & Assocs.*, 159 Ariz. 1, 4, 764 P.2d 736, 739 (App.1988) (if reviewing court's action would have no effect on parties, an issue is moot for purposes of appeal). As previously discussed, the Assessor accepted the ADOR letter as proof of Taxpayer's exempt status as soon as it was provided. Taxpayer concedes in its reply brief that the Assessor "seems also to allow property tax exemptions for a church that can provide a letter of exemption from the Arizona Department of Revenue as the Church finally did here."

¶ 28 Our legislature has determined that a taxpayer may not seek declaratory relief regarding the validity or amount of a tax without first paying the taxes assessed. Section 42–11004 states:

> A person on whom a tax has been imposed or levied under any law relating to taxation may not test the validity or amount of tax, either as plaintiff or defendant, if any of the taxes:
> 1. Levied and assessed in previous years against the person's property have not been paid.
> 2. That are the subject of the action are not paid before becoming delinquent.
> 3. Coming due on the property during the pendency of the action are not paid before becoming delinquent.

¶ 29 Taxpayer indisputably failed to pay the assessed taxes, asserting it was financially unable to do so. It is, however, the role of the legislative branch of government to determine whether, as a policy matter, taxpayers unable to pay should nonetheless be allowed to challenge their assessments in court. *Cf. Bob Jones Univ.*, 416 U.S. at 750, 94 S.Ct. 2038 (whether to grant non-profit organizations pre-enforcement review of decisions affecting tax-exempt status is a "policy-laden" decision for the legislative branch of government). Some states permit such filings. *See, e.g.*, Tex. Tax Code § 42.08(d) ("After filing an oath of inability to pay the taxes at issue, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts."); Mass. Gen. Laws Ch. 59, § 65B (under enumerated circumstances, property owner may allege inability to pay in order to appeal denial of property tax abatement). The Arizona legislature, though, "has seen fit to prescribe the method by which the validity of tax measures may be tested, i.e.: By paying the tax, and bringing suit to recover it. No other means have been provided."[9] *Lane*, 72 Ariz. at 391, 236 P.2d at 463; *cf. Air Polynesia*, 742 F.2d at 548 ("[A] demonstrated inability to pay a tax does not remove the jurisdictional bar of the [federal] Tax Injunction Act."); *Wood v. Sargeant*, 694 F.2d 1159, 1161 (9th Cir.1982) ("We cannot believe that Congress thought that the barrier to federal suits that it was erecting [through the anti-injunction act] would have in it a door to the federal courts so wide as to admit every impecunious or financially distressed taxpayer. . . .").

¶ 30 For the reasons stated, the tax court properly dismissed counts 3 and 6 of the complaint.

## IV. Section 42–18352

¶ 31 Count 4, denominated "Action Pursuant to A.R.S. § 42–18352," was also properly dismissed. As the tax court noted, § 42–18352 establishes a method "to recover taxes already collected illegally, not to prevent the collection of illegal taxes." *See* A.R.S. § 42–18352(E) (taxpayer aggrieved by

---

**9.** There are undoubtedly competing policy considerations for the legislative branch to weigh, but effectively preventing impecunious taxpayers from challenging their assessments in court can lead to harsh results. We note, however, that Taxpayer has not challenged the constitutionality of any Arizona statute in this litigation—either as to facial validity or on an "as-applied" basis.

adverse determination *"who pays the tax* may maintain an action to recover the tax alleged to be illegally collected")  (emphasis added).  Because Taxpayer did not pay the assessed taxes, its legal challenge predicated on A.R.S. § 42–18352 was properly dismissed.

### CONCLUSION

¶ 32 For the reasons stated, we affirm the dismissal of Taxpayer's complaint.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and LAWRENCE F. WINTHROP, Judge.